BODIE v. CHARLESTON & WESTERN CAROLINA RY. CO.

1. APPEAL.—Appellant permitted an amendment cannot complain of error in words used by Judge in granting it.
2. EVIDENCE—DAMAGES—EYES.—Under allegation of damages to internal organs, it is proper to admit evidence as to impairment of eyesight, in so far as it tended to show a result of internal injuries.
3. NONSUIT.—There being evidence tending to establish defendant's negligence as alleged, nonsuit was properly refused.
4. NEGLIGENCE—CHARGE.—Jury were not instructed that the law in some cases required a higher degree of care than due care; but that negligence is a relative term and must be applied to each case according to its circumstances by the standard of what a man of ordinary intelligence, common sense and prudence would have done under like circumstances. Elements of actionable negligence stated.
5. ASSUMPTION OF RISKS—MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—JURY—APPLIANCES.—Whether an employee assumed the risks of his employment by remaining in the service of the master after knowledge of defective appliances, notice to master, and promise by him to remedy, is question for jury. Distinction between assumption of risks and contributory negligence stated.
6. ASSUMPTION OF RISKS—DEFENSE—RAILROADS—CONSTITUTION—APPLIANCES—SECTION MASTER—WORDS AND PHRASES.—Under Con., art. IX., sec. 15, assumption of risks by employee cannot be set up by railroad company as defense to an action by a section master for personal injuries occasioned by failure of company to furnish sufficient number of servants to perform the work. "Appliances" in this section held to include "human instrumentalities."
7. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—CHARGE.—Jury was not instructed that plaintiff could recover, although guilty of contributory negligence, if defendant by exercising due care could have avoided the accident, but that contributory negligence in any degree would defeat his recovery. When negligence of plaintiff is a direct and proximate cause of injury so as to constitute contributory negligence, discussed.
8. CHARGE—PREPONDERANCE OF EVIDENCE.—Instruction that jury must

be sure before finding for defendant, that contributory negligence has been proved, in view of other parts of the charge, held to mean that defendant must prove it by the preponderance of the evidence.

9. CONTRIBUTORY NEGLIGENCE—CHARGE.—Under charge of contributory negligence, it was error to charge jury that if plaintiff did the work assigned to him in the usual, customary manner, he could not thereby be charged with doing it negligently.

Before BENET, J., Greenwood, November term, 1900. Reversed.

Action for damages for personal injuries by Josiah W. Bodie against Charleston and Western Carolina Railway Co. From judgment for plaintiff, defendant appeals.

*Mr. S. J. Simpson,* for appellant, cites: *As to assumption of risks by plaintiff:* 5 Am. St. R., 245; 55 Ia., 527. *As to proximate cause:* 52 S. C., 336; 57 S. C., 433; 54 S. C., 498; 1 Strob., 525. *Instruction that if plaintiff did the work in the usual, customary manner, he could not be charged with negligence, was error:* 60 S. C., 168; 25 S. C., 34; 58 S. C., 230. *The instructions as to contributive negligence were erroneous:* 56 S. C., 95; 59 S. C., 319; 55 S. C., 192.

*Messrs. Sheppard & Grier,* also for appellant. The latter cites: *Nonsuit should have been granted because there was a total failure of evidence tending to show negligence on the part of defendant as a proximate cause of the injury:* 19 S. C., 32; 21 S. C., 556; 57 S. C., 249; 21 S. C., 549, 100, 470; 22 S. C., 563; 45 S. C., 282; 42 S. C., 472; 34 S. C., 214; 18 S. C., 267; 45 S. C., 278; 44 S. C., 443. *Art. IX., sec. 15, Con., does not apply to case of accident to section master from accidental falling of his servant:* 56 S. C., 455; 22 S. C., 563; 51 S. C., 96, 529; 81 N. .Y, 516; 54 S. C., 503; 57 S. C., 435; 33 S. C., 198; 27 L. R. A., 583; 95 U. S., 398. *Evidence shows that plaintiff assumed the risks:* 83 Tex., 214; 122 U. S., 189; 152 U. S., 145; 153 Mass., 398; 108 Mo., 81; 65 Ia., 226; 52 Ia., 276; 66 Ia., 590; 12 W. R., 440. *Judge should define negligence:* 16 Ency., 401, 399. *Doing*

*work in the ordinary or accustomed way does not negative negligence:* 20 S. C., 29; 51 S. C., 461; 29 S. C., 322; 30 S. C., 228. *As to the charge in regard to contributory negligence:* 59 S. C., 311; 56 S. C., 95; 15 S. C., 452; 58 Am. Dec., 191; 4 Rich., 228; 46 S. C., 547; 46 Wis., 404; 20 S. C., 21, 221; 95 U. S., 442; 15 S. C., 461; 23 S. C., 537. *As to duties of master to furnish appliances:* 1 L. R. A., 174; 42 S. C., 472, 73; 80 Hun., 116; 17 S. C., 167; 5 L. R. A., 441; 55 S. C., 483. *As to the difference between assumptions of risks and contributory negligence:* 49 L. R. A., 33.

*Messrs. Caldwell & Park* and *Graydon & Giles,* contra, cite: *As to what instrumentalities are embraced in the word appliances:* 2 Ency., 431, note 3; 53 N. Y., 549; 49 N. Y., 521; 42 S. C., 467. *Evidence as to impairment of eyesight as showing internal injuries, properly admitted:* 5 Ency. P. & P., 747; 70 Tex., 73; 115 Ind., 443; 60 S. C., 9. *Negligence properly defined by the Judge here:* Shear. & Red. on Neg., sec. 47; 11 L. R. A., 391; 7 Ency., 435. *As to duties of master in selecting machinery:* 36 S. C., 199; 18 S. C., 262, 275; 34 S. C., 211; 40 S. C., 104; 42 S. C., 467. *No error in charge as to doing the work in the ordinary and customary way:* 44 S. C., 432. *As to the charge on contributory negligence:* 9 Rich., 84; 51 S. C., 222; Wood's Addison on Torts, vol. 1, p. 42, note 1; 55 S. C., 187; 59 S. C., 311; 56 S. C., 91; 4 Rich., 231. *As to assumption of risks:* 40 L. R. A., 798; 100 U. S., 225; Cooley on Torts, 559; 34 S. E. R., 976; 14 Ency., 357; 7 Ency., 421; 18 S. C., 281, 384; 52 S. C., 443; 55 S. C., 101; 42 S. C., 467; art. IX., sec. 15, Con.

September 6, 1901. The opinion of the Court was delivered by

MR. JUSTICE JONES. This appeal comes from a verdict and judgment in favor of plaintiff, in an action for damages for personal injuries alleged to have been sustained through

defendant's negligence in failing to furnish an adequate force of laborers to do the work required of plaintiff as section track foreman, in the hauling and piling of steel rails, after application for additional help by the plaintiff and promise by defendant to supply the same. The sixth paragraph of the complaint alleged: "VI. That on the 15th day of February, 1900, while the plaintiff, in compliance with the orders of the defendant, was trying, with the assistance of his three hands, to carry one of the said steel rails up an embankment for the purpose of loading it on his car and hauling and piling it, as aforesaid, one of his said hands was entirely overcome and exhausted by the great weight of the said steel rail, on account of the failure of the defendant to furnish a sufficient force to carry the same, and fell to the ground, thereby causing the whole weight of one end of the said steel rail to be thrown on the plaintiff, by which his right leg was knocked out of place, his back injured, and a great strain put upon his whole body, causing a lesion of his kidneys and other internal organs." Besides the general denial, the defendant interposed as special defenses contributory negligence and assumption of risk after knowledge. The numerous exceptions of appellant will be considered under the subject heads following:

1. Amendment to answer. On motion of the defendant, appellant, over the objection of plaintiff, respondent, the Circuit Court permitted defendant to amend the answer by inserting the following: "8. That the said plaintiff went about the work in which he was engaged when he alleges to have been injured, with full knowledge of the manner in which said work was to be done, and of all the facts and circumstances connected therewith, that he directed the said work, and assumed all risks incident thereto." Plaintiff's counsel objected to this amendment under art. IX., sec. 15, which provides, "Knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways or appliances of any machinery, shall be no defense to an action for injury caused

thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them." The Circuit Court, in allowing the amendment, said that the first portion would be objectionable, but the additional clause, "and the plaintiff assumed all the risks, etc.," is sufficient to permit its allowance. Upon this appellant predicates the third exception, which assigns error (1) in holding that such amendment was permitted for the purpose of alleging assumption of risk only, and not for the purpose of setting up the defense that the defendant had knowledge of the alleged shortness of hands, and that such knowledge was a bar to his recovery; and (2) in holding that the allegations of negligence here come within the word appliances, as used in art. IX., sec. 15, of the Constitution. This exception cannot be sustained for several reasons. Appellant having been granted what was asked for, cannot complain whether the remarks accompanying were correct or not. Since the defense of assumption of risk must necessarily be based upon the employee's knowledge, either actual or constructive, we are unable to see wherein appellant has been prejudiced, whatever may be the correct view as to the meaning of the term "appliances," as used in the section of the Constitution referred to. But as we will show hereafter, the term "appliances," in sec. 15, art. IX., of the Constitution, includes a force of hands sufficient to operate the machinery, &c., and if there was error in the ruling of the Circuit Court, it was in allowing the amendment at all.

2. The admissibility of certain testimony. The first and second exceptions assign error in allowing the plaintiff, Bodie, to testify as to damages to his eyesight, when there was no allegation in the complaint asking damage for such injury. The complaint alleged that plaintiff's "right leg was knocked out of place, his back injured and a great strain put upon his whole body, causing a lesion of his kidneys and other internal organs." The Circuit Court admitted the testimony as to impairment of eyesight in so far as it tended to show a result or effect of

the internal injuries alleged.    This was not error, as shown by the recent case of *Youngblood* v. *S. C. & Ga. R. R. Co.,* 60 S. C., 14.

3. Refusal of nonsuit.    The fourth, fifth and sixth exceptions allege error ( 1 ) in that there was no evidence that the failure to furnish a sufficient force of hands was the proximate cause of the injury; (2) in that the evidence showed that the proximate cause of the injury was the accidental fall of a fellow-servant; (3) in that the evidence showed that plaintiff with knowledge assumed the risk of the injury alleged.    These grounds were all satisfactorily disposed of by the Circuit Court in refusing the motion, in accordance with the well settled rule in this State, that nonsuit should not be granted when there is any evidence tending to establish the allegations of the complaint.

4. Negligence.    The eighth exception complains of the charge to the jury in reference to the matter of negligence. The jury was charged: "Negligence simply means want of due care.    That is a very short definition.    If you weigh each word you will find that that contains the whole doctrine; want of due care, not simply want of care, but want of due care.    From its very nature negligence may consist in the doing something which should not have been done.    Negligence may also consist in leaving undone that which ought to have been done.    It may, therefore, be a fault of omission as well as a fault of commission. [It is impossible for the Court to furnish a jury with a hard and fast measure of care, the presence of which, or the exercise of which, would drive away the idea of negligence, the absence of which would mean the presence of negligence. There is no such hard and fast rule which can be applied by a jury like a foot rule or a bushel measure, but there is a general principle which underlies the doctrine of negligence, and shows sufficiently clearly the measure of care proper in each particular case, and it is this: the greater the probability of danger in the particular circumstances, the greater is the required degree of care, because the measure of care natu-

rally varies in the different circumstances.   For example, a man cutting wood with an axe must exercise a proper amount of precaution to guard against injuring other people that may be near him; but a man who is blasting rocks with dynamite, since there is much greater danger in handling that explosive than in holding an axe, is required to exercise a much greater degree of care.   Due care in handling an axe in cutting wood would not be a sufficient measure of care in handling dynamite and blasting rock; but this shows you that the jury in each particular case has to establish from the testimony in the case exactly the measure of care which should have been exercised under the circumstances, and it is just that amount of care which would or should have been exercised by a man of ordinary intelligence and prudence. Your common sense and intelligence will guide you, in deciding by the testimony] in the case what amount of care should have been exercised by the railway company in the circumstances detailed in the testimony, and also will show you what amount of care should have been exercised by Bodie, the plaintiff, under the circumstances detailed, when you are considering the subject of contributory negligence, and I repeat: It is just that degree of care which a man of ordinary intelligence, common sense and prudence should have exercised under the same or similar circumstances, not absolute care, not the utmost care to guard against a possible danger, but only reasonable care, due care, that amount of precaution proper to guard against the probable danger." The exception is to that portion of the charge above which is within the brackets, and the specific errors assigned are (1) that the jury were instructed that in some cases a higher degree of care than due care is necessary to exempt from liability; and (2) the charge left to the jury the legal question, what degree of care was necessary in this case?   We do not think the charge is amenable to either objection.   The learned Circuit Judge, by his language and illustration, merely meant to show the jury that "negligence" is a relative term when applied to *different* cases or sets of circum-

stances, and that the care or caution required in one case may be greater or less than the care or caution required in another; but the jury were plainly instructed that in any *particular* case or set of circumstances the law enjoined the duty of observing the care due under such circumstances; and the Court did not instruct the jury that in any case the law required a higher degree of care than due care. The jury were further instructed that the measure of the care due in any particular case was "that amount of care which would or should have been exercised by a man of ordinary intelligence and prudence," or "that degree of care which a man of ordinary intelligence, common sense and prudence should have exercised under the same or similar circumstances." The charge was, therefore, nothing more than what has been often approved in this State, viz: "Negligence is the want of ordinary care under the circumstances." A more comprehensive and scientific definition of negligence is that contained in 16 A. & E. Ency. Law, 389, as follows: "Actionable negligence is the inadvertent failure of a legally responsible person to use ordinary care under the circumstances, in observing or performing a non-contractual duty implied by law, which failure is the proximate cause of the injury to a person to whom the duty is due." Negligence involves (1) a duty to exercise ordinary care under the circumstances; (2) a breach of such duty; (3) the breach being inadvertently, not wantonly nor intentionally made; (4) injury or damage resulting to the party complaining; (5) and that such injury be proximately caused by, or be the natural and probable result of such breach. The charge viewed as a whole fairly instructed the jury as to what matters constitute actionable negligence.

5. Assumption of risks. The eighteenth and twentieth exceptions complain of error in the charge to the jury on this subject. The defendant's sixteenth request to charge was as follows: "When an employee, after having had an opportunity to become acquainted with the risks of his situation, voluntarily accepts them and

continues in the performance of them, he cannot recover for his subsequent injury by such exposure." In response to this request, the Court said: "That is rather a bald statement of the doctrine. It is good law, to a certain extent, but it is left for the jury to decide under the circumstances, whether his continuance to perform the work should, under the circumstances, be held to be a voluntary assumption of the risks, or whether by, for instance, the promise of the master, he was entitled to continue a reasonable time still exposed to the danger, and yet not relieve the master from his liability for the increased risk, I have already fully charged on that doctrine." It is complained in the eighteenth exception that the request contained a sound proposition of law and should have been charged without modification, and that "the modification gave the jury an incorrect idea of the difference between assumption of risks and waiver, of defects and waiver." The twentieth exception is as follows: "Twentieth. Because it was error in his Honor to charge the jury as follows: 'But if the testimony shows under all the circumstances that while he did continue to work exposed to this increased risk of danger, he did complain of this increased risk or danger to the master, had asked for means to lessen or remove the increased risk or danger, and had been promised by his master that such would be done, if he continues to work after that promise, it is then a question for the jury, judging by the length of time under all the circumstances that he continues to work, whether or not by thus continuing, he has assumed the risk, or is still entitled to ask and hold the master liable. That is a question for the jury to determine under the circumstances shown by the testimony, whether the master by promising to remove the danger has assumed the risk and liability following, or whether the servant by continuing too long without the danger being removed, continues the work, has thereby assumed the increased risk of danger,' the error being, it is submitted: (a) In wholly failing to distinguish and instruct the jury as to the radical difference between the

defense of contributory negligence and assumption of risk. (b) In entirely withdrawing from the jury and eliminating from the case the defense of assumption of risk. (c) In charging incorrectly the law applicable to assumption of risk." The sentence immediately preceding the portion of the charge above excepted to was as follows: "* * * I repeat, that a railway servant, while he assumes the ordinary risks incident to the kind of work that he is engaged to do, does not assume the risks or dangers to which he may be exposed by unsafe or unsuitable or insufficient means and appliances for doing the work required of him, but while that be so, still he may without complaining of such added risk and danger continue to work after he has discovered the increased risk or danger, he may do this voluntarily, and he may be injured as the direct result of this increased risk or danger, and if so, he would be held to have waived his right to hold his master liable, he would be held to have assumed the increased risk of danger, and the master could not be held liable." The charge to the jury was to that effect, that if a railway employee after knowledge of an extraordinary risk remains in the employer's service without complaint on his part and promise of amendment by the employer, he is held, as matter of law, to have assumed the risk, and cannot recover for an injury directly resulting therefrom; but if complaint be made and there is promise of removal, and the employee while remaining thereafter a reasonable time in the employer's service is injured, then it is for the jury to determine whether the employee by remaining in the employer's service assumed such risk. If it be conceded that this case is one in which it was proper to submit to the jury the question of assumption of risk by an employee, the charge was more favorable for the appellant than the law justifies. In *Mew* v. *Railway Company,* 55 S. C., 101, the Court said: "The remaining in the master's service by an employee, after knowledge of an alleged defect in the instrumentalities to be furnished by the master, is not as a matter of law an assumption of the risk by the employee. Whether

the employee assumed the risk, is a question for the jury, to be determined from all the circumstances of the case. If the undisputed evidence is such as to be capable of but one inference, viz: voluntary assumption of the risk by the employee, then the jury could be rightfully instructed that the employee could not recover. *Bussey* v. *R. R.*, 52 S. C., 438." In the case of *Powers* v. *Oil Company*, 53 S. C., 363, the Court says: "A promise by the master to remedy a defect tends to rebut the inference of waiver of the defect by the servant's remaining in the master's service after knowledge. If the servant continued in discharge of his duties, relying on the master's promise to remove a defect, he could not be said to have waived such defect. The jury was the proper tribunal to determine this question in this case." It is manifest that the Court did not withdraw from the jury the question as to assumption of risk, but, on the contrary, explicitly instructed them on that subject, and substantially charged all the requests of the appellant in relation thereto. The doctrine of assumption of risk by the employee is distinct from the doctrine of contributory negligence, although there may arise a certain condition of facts capable of supporting either inference. This has given rise to a great deal of confusion of statement when dealing with these defenses. "Assumption of risk" rests in the law of contract, and involves an implied agreement by the employee to assume the risks ordinarily incident to his employment, or a waiver, after full knowledge of an extraordinary risk, of his right to hold the employer for a breach of duty in this regard. *Hooper* v. *R. R.*, 21 S. C., 547. The law as to waiver applies because the relation between the employer and employee is contractual, and waiver is the voluntary relinquishment of a known right. By the contract the employer and employee each assume certain risks, but, as in all contracts, either party may waive his right to insist upon strict performance of the other's contractual duty. When, therefore, a case arises in which it is shown (upon proper pleading) that the employee has assumed the risk from

which the injury arose, or, what is the same thing in effect, has waived his right to hold the employer responsible for the risk, the employee's action is defeated because of his agreement and not because of negligence. "Contributory negligence," on the other hand, rests in the law of torts, as applied to negligence, and when such defense is established, the plaintiff's action is defeated, not because of any agreement express or implied, but because his own misconduct was a proximate cause of the injury. This distinction, while not emphasized in the charge, was plainly manifest therein, for the jury were instructed as to both defenses in language from which the distinction was inferable. Moreover, if appellant desired instructions specifically pointing out the distinction between the two defenses, appellant should have presented specific requests embodying such distinction, which was not done.

But we will now attempt to show that the doctrine of "assumption of risk" has no application to this case, and by having it submitted to the jury, appellant received favor instead of prejudice. We think that art. IX., sec. 15, of the Constitution, sweeps away the defense of "assumption of risk" in all cases falling within its provisions. We quote the section in full, as follows: "Sec. 15. Every employee of any railroad corporation shall have the same rights and remedies for any injury suffered by him from the acts or omissions of said corporation or its employees as are allowed by law to other persons not employees, when the injury results from the negligence of a superior agent or officer, or of a person having a right to control or direct the services of a party injured, and also when the injury results from the negligence of a fellow-servant engaged in another department of labor from that of the party injured, or of a fellow-servant on another train of cars, or one engaged about a different piece of work. *Knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways or appliances, shall be no defense to*

*an action for injury caused thereby, except as to conductors
or engineers in charge of dangerous or unsafe cars or
engines voluntarily operated by them.* When death ensues
from any injury to employees, the legal or personal repre-
sentatives of the person injured shall have the same rights
and remedies as are allowed by law to such representatives
of other persons. *Any contract or agreement expressed or
implied made by any employee to waive the benefit of this
section, shall be null and void;* and this section shall not be
construed to deprive any employee of a corporation, or his
legal or personal representative, of any remedy or right that
he now has by the law of the land. The General Assembly
may extend the remedies herein provided for to any other
class of employees." The Circuit Court charged the jury,
we think correctly, that "the word appliances includes not
only inanimate machinery and tools and apparatus, but also
the living men or persons needed to operate the machinery."
This view is supported in 3 Wood's Railway Law, p. 1478,
and *Johnson* v. *Ashland Water Co.,* 71 Wis., 553, s. c., 5
Am. St. Rep., 243. In the case of *Donahue* v. *R. R. Co.,*
32 S. C., the Court considered that the negligent furnishing
of a vicious horse by a master to a street car driver, by which
the driver was killed, was a breach of the master's duty to
furnish the servant with safe and suitable appliances to do
the work for which he was engaged. We do not think it is
straining the meaning of the language, "defective or unsafe
character or condition of any machinery, ways or appli-
ances," as used in the section quoted, to hold that it includes
the human instrumentalities physically applied to properly
operate the machinery and ways of the railroad company,
and so has in contemplation the inadequacy of a force of
hands to safely perform the work required. If this be so,
then it is expressly provided in the section of the Constitu-
tion quoted and italicised by us, that the employee's know-
ledge of the unsafe condition of such appliances shall be no
defense to an action for injury caused thereby. The plain-
tiff being a section master, does not fall within the exception

as to conductors and engineers.    There can be no assump-
tion of risk by an employee without knowledge of the risk,
either actual or constructive, since, as already shown, the
doctrine of assumption of risk depends upon agreement or
waiver, which depends upon such knowledge; and the sec-
tion further provides that any agreement, express or implied,
made by an employee to waive the benefit of the section,
shall be void.    We hold, therefore, that the matter of as-
sumption of risk has no application to this case.

6. Contributory negligence.    The twelfth, thirteenth,
fourteenth, fifteenth and sixteenth exceptions assign error
in the charge as to contributory negligence.    The twelfth
exception complains of the following portion of the
charge: "A man may be careless and negligent of his
receiving injury, and yet his negligence may not be
contributory negligence.    It may not be a direct cause or
proximate, and if the injury was inflicted by the defendant
without any direct help from the negligence of the plaintiff,
then the defendant would still be liable; if the injury could
have been avoided, in spite of the plaintiff's negligence, by
the exercise of due care on the part of the defendant, then
the defendant would be liable, because that would mean that
the plaintiff's negligence did not contribute to the injury,
because it was not a proximate or direct cause."    The error
assigned is that the Court thereby instructed the jury that
the plaintiff could recover, though guilty of contributory
negligence, if the defendant, by the exercise of due care,
could have avoided the injury.    The thirteenth exception
complains of the same language as in effect instructing the
jury that if the defendant could have avoided the injury by
the exercise of due care, any negligence of the plaintiff in
reference to the injury would not be a proximate or direct
cause thereof so as to prevent his recovery.    If the charge
really bore the meaning attributed to it by the exceptions, it
would unquestionably be reversible error, for the law is too
well settled to need citation in support of it, that contribu-
tory negligence will always defeat plaintiff's recovery.    But

31—61

an examination of the charge shows that it does not mean what appellant claims. The Court had previously instructed the jury by defining contributory negligence in the language of 7 Ency. Law, 371, 2 ed., approved in *Cooper* v. *R. R.,* 56 S. C., 95, as follows: "Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." Then in his own language the Court proceeded to explain the meaning of this definition, and immediately preceding the language above complained of, said: "You understand, therefore, that when contributory negligence has been proved satisfactorily to any extent, more or less, that is the end of the investigation of the jury, and they will find for the defendant; but they must be sure of this contributory negligence, that is to say, working with the defendant's negligence as a direct, proximate and immediate cause. It will mean that both were to blame directly, and when both are to blame, the one cannot be heard in law to blame the other. The law will not allow either to put the blame on the other, nor to recover damages from the other, nor may a jury award damages against a defendant, even if the testimony shows that the defendant is more to blame than the plaintiff, if the plaintiff is also directly to blame as being guilty of contributory negligence. You heard me read from the Cooper case, where our Supreme Court says that contributory negligence to any extent on the part of the plaintiff will always defeat a recovery, and I repeat it that contributory negligence of the plaintiff to any extent, whether much or little, will always deprive a plaintiff of the right to recover damages, but, as I said before, it must be contributory negligence acting with the defendant's negligence, aiding the defendant's negligence, concurring with the defendant's negligence, as a proximate, direct cause, because not every kind of negligence * * * on the part of the plaintiff will defeat his claim for damages and prevent

recovery." Then immediately after the language excepted to above, the Court said: "For example, a man may be careless in standing in a dangerous place. He may, for instance, be standing in the middle of a thoroughfare on a busy day, and if he was injured by some man who was recklessly and furiously driving a vehicle, the injured man's carelessness in standing in the middle of the road could not be held to be a direct proximate cause of the injury, because if it be manifest that the man would not have been injured if the driver had exercised ordinary care, the driver cannot claim that the man's own carelessness contributed to the injury. There is a case in the books where a man was standing on a dock at a waterway, carelessly standing in a dangerous place; a steamer came in, driven recklessly and carelessly, and struck the place where he was standing so violently that he was injured, and the Courts properly held that the fact that he was standing there carelessly and in a dangerous place, could not be regarded as contributing to his injury, when the injury would not have been inflicted if the steamer had been carefully handled. It simply means that the carelessness did not directly aid the negligence of the defendant, and while it was carelessness, it was too remote, it was not proximate, did not contribute to the injury as an effective cause." It is thus manifest that the Court was instructing the jury that carelessness of plaintiff, which was not a direct and proximate cause of his injury, could not constitute contributory negligence, which involves plaintiff's negligence as a direct and proximate cause of his injury. The jury were repeatedly told that contributory negligence to any extent would defeat plaintiff's recovery. This case is very different from Cooper's case, 56 S. C., 95, where the jury were erroneously instructed to the effect that although plaintiff's immediate act of negligence caused his injury, if the injury could have been prevented by the ordinary care of the defendant, and the defendant did not observe that care, defendant was liable for the injury. Such a charge eliminated contributory negligence as a de-

fense, since that defense is always based on the concession that defendant's own failure to observe ordinary care was a proximate cause of the injury. In considering the matter of "contributory negligence," confusion of thought is likely to arise, unless there is kept in mind the difference between "contributory negligence" and negligence which contributes remotely to the injury or merely furnishes a condition for its infliction. The former necessarily involves negligence as a direct proximate cause, and always defeats a recovery unless the injury is wantonly or wilfully inflicted; the latter involves negligence of the injured party, which is not a proximate cause of the injury, and does not defeat a recovery, because in the bewildering complexity of causes the law regards the proximate not the remote cause. *Causa proxima, non remota, spectatur.* The term "contributory negligence" is sometimes, but inaccurately, used to characterize negligence of the injured party, which is a remote cause or mere condition of the injury, as in the cases of *Inland and Seaboard Coasting Co.* v. *Tolson,* 139 U. S., 551, 11 Sup. Ct. Rep., 655, and *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S., 409, 12 Sup. Ct. Rep., 687. In this case, however, the Circuit Court was cautious to impress the proper distinction and to emphasize the necessity that the jury must find that plaintiff's negligence proximately caused his injury, in order to defeat his action, and that when such contributory negligence exists to any extent it defeats recovery. When the Court said: "If the injury could have been avoided, in *spite* of plaintiff's negligence, by the exercise of due care on the part of defendant, then the defendant would be liable, because that would mean that the plaintiff's negligence did not contribute to the injury, because it was not a proximate or direct cause," the Court evidently did not mean to state anything inconsistent with the repeated instructions that contributory negligence (as defined above), would always defeat a recovery, but merely meant to state that the injured party might be negligent, and yet his negligence may be remote and not proximate, in which case he could recover,

because his negligence would not be "contributory negligence." The two illustrations given by the Court, which appellant excepts to in the fifteenth and sixteenth exceptions, were intended to further impress the instruction given. The first illustration given, involving that the driver *saw or ought to have seen the exposed condition* of the man standing carelessly in the crowded thoroughfare, and, therefore, if under such circumstances he failed to observe due care to avoid injury to the man, this negligence, which arose after discovery of the injured party's exposure, would be the sole proximate cause of the injury, and the careless exposure of the injured person would be a mere condition and not a proximate cause. The case would be different if the injured person was aware of the negligence of the driver and notwithstanding failed to observe ordinary care to avoid the consequences of the driver's negligence. In reference to this illustration, viz: an injury inflicted by *reckless and furious* driving in a crowded thoroughfare, it may be said that such injury was wantonly inflicted, in which case it is of no consequence whether plaintiff's negligence was proximate or remote, since it is well settled that contributory negligence is no defense when the injury is wantonly or wilfully inflicted. The illustration of a man injured, while standing on a wharf, by the negligent management of a steamboat, was probably based upon Tolson's case, *supra;* in that case the Supreme Court of the United States said: "But upon the question of the plaintiff's position and attitude, the evidence was conflicting; and it was indisputable that the steamboat was approaching the wharf at his (plaintiff's) call and for the purpose of receiving freight from his hands, and that the pilot and officers *saw him as he waited on the wharf.* The jury might well be of the opinion that while there was some negligence on his part in standing where and as he did, yet the officers of the boat *knew just where and how he stood,* and might have avoided injuring him if they had used reasonable care to prevent the steamboat from striking the wharf with unusual and unnecessary violence.

If such were the facts, the defendant's negligence was the proximate, direct and efficient cause of the injury (italics ours). In 7 Ency. Law, 2 ed., pp. 383, 384, 385, the rule is stated, and we think correctly after investigation, as follows: "A want of ordinary care may be said to contribute proximately to an injury, when it is an active and efficient cause of the injury in any degree, however slight, and not the mere condition or occasion of it. But it is not a proximate cause of the injury when the negligence of the person inflicting it is a more immediate, efficient cause. And so when the negligence of the person inflicting the injury is subsequent to and independent of the carelessness of the person injured, and ordinary care on the part of the person inflicting the injury would have discovered the carelessness of the person injured in time to avoid its effect and prevent injuring him, there is no contributory negligence, because the fault of the injured party becomes remote in the chain of causation. In such a case, the want of ordinary care on the part of the injured person is held not a judicial cause [*i. e.,* a proximate cause] of his injury, but only a condition of its occurrence. Conversely, when the carelessness of the person inflicting the injury is antecedent to the negligence of the person injured, and the latter might by ordinary care have discovered the failure of the former to use such care in time to avoid the injury, there can be no recovery, because the intervening negligence of the injured person is the direct and proximate cause of the injury." This statement of the rule is not an exception to, or modification or qualification of, the doctrine of contributory negligence, but is only an illustration of that doctrine, which requires that in order to constitute contributory negligence, the injured person's negligence must directly and proximately cause the injury, combining and concurring with the negligence of the injuring party. *Farley* v. *Veneer Co.,* 51 S. C., 236; *Disher* v. *R. R. Co.,* 55 S. C., 192.

The seventh exception alleges error in charging the jury as to contributory negligence, that before they could find for

the defendant they must be sure that contributory negligence had been proven, thereby, in effect, calling for a higher degree of proof that the law requires. We do not think the exception is well taken. The burden was upon defendant to establish the defense of contributory negligence to the *satisfaction* of the jury, and that is all that the charge can be fairly construed to mean, especially in view of other portions of the charge, wherein the jury were plainly instructed that in determining the issues, they were to be guided by the greater weight or preponderance of the evidence.

We notice finally the tenth and seventeenth exceptions. The Court instructed the jury: "But if the evidence satisfies you that he (plaintiff) was using the force to do the work required of him in the usual, customary way, then I charge you that he was not required as section foreman and railway servant to find out if there was another safer way, because he is simply required to use ordinary care, and the man who does ordinary work in the ordinary way, in the usual manner, the customary manner, can hardly be held guilty of negligence." Defendant's ninth request to charge and the Court's response thereto is as follows: "9. If the jury believe that the force of hands furnished to the plaintiff was sufficient and safe for doing the work in hand in a different way from that which he adopted, then the plaintiff cannot recover, if the evidence shows that his injury resulted from his use of the force for the work in a more dangerous way, unless the evidence also shows that he was directed or required by his employer to adopt such more hazardous way." In response to this request the Court said: "I charge you that, with the modification that if he was doing the work in the usual, ordinary way, the customary way, he was not required to look out for another way." It is excepted that the foregoing charge was erroneous, (1) in charging on the facts, in violation of the Constitution; (2) in instructing the jury, in effect, that negligence is negatived if ordinary work is done in the usual,

customary manner. We think the charge was erroneous as alleged. Ordinary care, as already approved, is that care which a person of ordinary intelligence and prudence should exercise under the circumstances. The charge made the usual, customary way of doing things a conclusive test, whether due care is exercised therein, whereas that is merely evidence which should go to the jury along with the other evidence, leaving the jury to determine from all the evidence whether due care was observed. The usual, customary way, may not be a negligent way, but in this the Court left the jury no discretion but to find that plaintiff was not negligent, if he was doing the work in the usual, customary way. In the case of *Bridger* v. *R. R. Co.,* 25 S. C., 24, the Circuit Court declined to charge that "the degree of care required of defendant is only such as is exercised by well regulated railroads over their turn tables, and that if defendant exercised such care in this case, there was no negligence," saying that other railroad's negligence could not excuse negligence by this defendant, and that it was for the jury to say whether there was negligence here. The Supreme Court held that there was no error in this. In the recent case of *Lowrimore* v. *Palmer Mfg. Co.,* 60 S. C., 168, the Circuit Court was requested to charge the jury: "If the jury believe that the Palmer Manufacturing Company exercised such care as other well regulated companies doing the like business ought to exercise and as proper prudence demanded under the circumstances, nothing more can be required, and they are not responsible." To which the Court replied: "I refuse that; we are not to discuss other well regulated companies, but this company." This Court, speaking by Chief Justice McIver, in overruling the exception to the refusal to charge, said, "The question, as the Circuit Judge very properly said, was whether the defendant used proper care in furnishing machinery and other appliances for the performance of the work required of its employees, and not what other well regulated companies did or ought to have done. What such companies did may possibly have had some bearing upon the

question of fact as to whether defendant exercised proper care." The principle announced in these cases is as applicable to the question of negligence by plaintiff as to negligence by defendant. The following statement in Beach on Contributory Negligence, p. 442, is applicable: "Where an employee in discharging the duty required of him has the choice of two ways of performing it, one entirely safe and the other obviously and greatly dangerous, adopts the dangerous way and is injured, he is guilty of negligence, which will bar a recovery by him in an action against the employer, based on the latter's negligence, and he cannot relieve himself of the consequences of such contributory negligence by showing that it was customary to perform the duty in the dangerous way." The error in the charge was harmful. There was evidence tending to show that the rails could have been safely carried up the embankment or fill, which was three or four feet high, by the four men constituting the usual force for that season of the year, by carrying up one end of the rail at a time, instead of the method adopted of carrying the rail, two men at each end. The plaintiff as section master directed the method of handling the rails, and according to the complaint he was aware of the inadequacy of the force, having made protest concerning this; when, therefore, the defendant sought to show contributory negligence on the part of plaintiff in doing the work in a dangerous way, when a safe way was at his choice, it was prejudicial to have the jury instructed that there was no negligence on the part of plaintiff, if the way he adopted was customary. It was for the jury to say whether such usual or customary method was such as a careful and prudent person should adopt under the circumstances. For this reason, a new trial must be granted.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.