BARKSDALE v. CHARLESTON AND WESTERN CAROLINA RY. CO.

1. RAILROADS—CAR INSPECTORS—CONDUCTORS.—Where a railroad company keeps a car inspector at a station, it is not the duty of the conductor to examine the cars turned over to him before taking it out on the train.

2. IBID.—CONDUCTOR—CONSTITUTION.—A CONDUCTOR is not barred of his right of recovery from injuries arising from defective cars voluntarily operated by him, under art. IX., sec. 15, of Con., unless the cars be dangerous or unsafe, or such as he should have so regarded in the exercise of ordinary prudence and reason.

3. IBID.—IBID.—Charge complained of held, when construed as a whole, to state the doctrine that it was the duty of a conductor, after starting with a car and discovering defects in it, to exercise judgment and discretion as to whether he should continue to carry it in his train.

*Divided Court.*

Before WATTS, J., Laurens, July term, 1902.    Affirmed.

Action by Walter E. Barksdale against Charleston and Western Carolina Railway Co.    From judgment for plaintiff, defendant appeals.

*Messrs. S. J. Simpson* and *Simpson & Cooper,* for appellant.    The former cites: *It was duty of conductor to throw out the car, and failing in this, he could not recover:* 21 S. C., 547; 22 S. C., 563; 61 S. C., 494; 55 S. C., 488.    *In proper case nonsuit should be granted for contributory negligence:* 46 S. C., 216.

*Messrs. Simpson & Cooper* cite: *Knowledge of conductor of defects in car voluntarily operated, defeat his recovery:* 26 S. C., 490, 96.

*Mr. N. B. Dial,* contra, cites: *Whether conductor was negligent in operating defective car, was for jury:* 55 S. C., 98; 52 S. C., 438; 21 S. C., 541.

April 28, 1903.    The first opinion in this case was delivered by

MR. JUSTICE WOODS.    The plaintiff in this action claims damages against the defendant, alleging that the defendant delivered to him as one of its freight conductors for transportation from Augusta, Ga., to Greenowod, S. C., a car, old, worn out and with flat wheels, and negligently loaded by defendant with lumber in an insecure and unsafe manner, with only two standards on each side, and with improper appliances and equipments; that by reason of the defective cars

and appliances and improper loading, the lumber became loose and disarranged, and was about to derail the train to which the car was attached and cause a wreck; that the train being without a bell-cord, or signal, or means by which he could stop it, plaintiff undertook to arrange the lumber so as to prevent disaster, and to save the lives of the railroad's employees and its property, and while so engaged, the lumber was thrown against him, by reason of which he suffered great bodily injury. There were other allegations not essential to the decision of the case as now presented. The defendant denied negligence on its part, charging the plaintiff's injury was caused by his own negligence; and further alleged that if the injury was caused by any negligence of defendant, plaintiff contributed to it and so could not recover. At the close of plaintiff's case, defendant moved for a nonsuit:

"First. On the ground that it appears clearly from the testimony that whatever defects there were in the car in this loading were well known to the plaintiff.

"Second. That the facts which have appeared here from the testimony of plaintiff, to my mind, show beyond a question that the plaintiff, even if the defendant was guilty of negligence, was himself guilty of contributory negligence, and, therefore, he cannot recover.

"Third. That he had such knowledge of these defects."

The plaintiff had testified, in substance, that he did not examine the car before he left Augusta, it not being his duty to do so, because at that point the company had car inspectors; that he knew nothing of defects until after leaving Augusta, but carried the car several stations after he discovered them, thinking the trouble not serious enough to warrant him in dropping the car. The plaintiff further said it would have been a great deal safer if he had stopped trying to arrange the lumber when he saw it would not strike a car on the siding which the train was then passing, and that if he had not continued in this, he thought the accident would not have occurred. It is on this

testimony, as we understand the motion for a nonsuit was based. If the defendant did not usually require its freight conductors at Augusta to examine the cars, but imposed that duty on another officer, then it is manifest the plaintiff could not be charged with negligence for failing to examine and ascertain the defects before taking the car, and the nonsuit could not be granted on that ground.

Nor do we think the motion should have been granted on the ground that plaintiff failed to cut out and leave the car at a siding after he discovered the defects. The Constitution provides, art. IX., sec. 15: "Knowledge of any employee injured of the defective or unsafe character or condition of any machinery, ways or appliances, shall be no defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them." It will be observed that in the first line of this section the terms used are "defective or unsafe," while in the exception made as to conductors and engineers, they are "dangerous or unsafe." A conductor, therefore, is not precluded from recovering for an injury arising from voluntarily operating a defective car, unless it is so defective as to be dangerous or unsafe. This exception in the Constitution, we think, did not in any way change the limitation before existing upon the right of recovery of conductors and engineers for injuries arising from defects in engines and cars known to them. It was not the law before the adoption of the Constitution, and it was not made the law by the clause above quoted, that an engineer or conductor carries forward his train at his peril, on the discovery after he has started on his trip of any defect in his engine or cars, which could possibly produce injury. Even slight defects under unforeseen conditions may produce disaster, but they could not for that reason be judicially declared sufficient to make the car or engine unsafe or dangerous. To defeat the claim of a conductor or engineer for injury in cases of this character, the knowledge must be of defects which the conductor or engineer believed

to be dangerous or unsafe, or which he ought to have regarded dangerous or unsafe, in the exercise of ordinary prudence and reason. Any other view would not only be straining the meaning of words, but would be unreasonable and result in an intolerable hardship both to the public and those charged with the conduct of railroads; for it would require an engineer or conductor upon discovery of any slight defect of machinery to stop his train or proceed at his peril. I. Shearman & Redfield on Negligence, sections 211, 214; *Lasure* v. *Manf. Co.,* 18 S. C., 280; *Snow* v. *R. R. Co.,* 8 Allen, 441; *Parker* v. *R. R. Co.,* 48 S. C., 384, 26 S. E., 669; *Bussey* v. *R. R. Co.,* 52 S. C., 443, 30 S. E., 477; *Bodie* v. *R.·R. Co.,* 61 S. C., 478, 39 S. E., 715. The true rule is well stated in *Hurst* v. *R. R. Co.,* 163 Mo., 309 : "When an employee has full knowledge of the risks of his situation and accepts them, he assumes such risks as are incident to their discharge, and if subsequently injured by such risks, he will not be entitled to recover damages for injuries sustained in consequence thereof, against his master, unless 'it was not so dangerous as to threaten immediate injury, or if he might have reasonably supposed that he could safely work about it by the use of care and caution.' " It was, therefore, a question for the jury to determine whether the defects in the car, which the plaintiff says he discovered after he started on his trip, were such that he regarded the car dangerous or unsafe, or such that he ought to have so regarded it in the exercise of ordinary prudence and judgment. If the defects were of this character, and the plaintiff was in charge of the car and could have dropped it before the accident, he could not recover. The presiding Judge could not determine this inquiry, and the motion for nonsuit was properly refused.

It is unnecessary to discuss any duty of the plaintiff as conductor to look out for and discover the alleged defects in the car after it left Augusta, for the plaintiff testified he actually did discover them before the accident occurred.

It follows, from the views expressed in considering the motion for nonsuit, that the exceptions to the charge covered

by the second and fifth grounds of appeal, and the third ground of appeal down to and including subdivision (b), must be overruled.

The presiding Judge instructed the jury: "If it was the duty of the conductor to make up his train in the city of Augusta and see that everything was in good order, and that the cars were properly loaded, and if plaintiff in this case was the conductor and it was his duty in the city of Augusta to see that everything was in good shape, in good order when he left there; if he had knowledge of the fact that the cars were unsafe and unsuitable and dangerous; if he had knowledge of that fact and moved those cars, then he assumed the duties incident to his office being conductor, and he cannot recover. But if the duty was imposed upon the railroad authorities, and such authorities loaded that car and turned it over to him, and it was not his duty to investigate as to whether everything was safe and suitable and in good order, the train which was turned over to him in the city of Augusta loaded by the officials there, then the conductor had a right to assume that safe and suitable appliances had been furnished; that the car turned over to him was properly loaded, and that the machinery to run it was safe, and that the appliances were safe and suitable." This was all appellants could ask as to the plaintiff's duty before leaving Augusta, but it does not cover his duty after the discovery of defects on the journey. The portion of the charge quoted would, I think, convey the impression to the jury that the plaintiff might continue to assume the car was not dangerous even after he had discovered on his journey the alleged defects, and it negatives the idea that he owed any duty to exercise judgment or discretion as to whether he should undertake to carry the car on after he knew of the defects. But it is argued, this erroneous impression made on the minds of the jury was removed by the general instructions given on the subject of contributory negligence, which were quite free from objection, and by the defendant's second request, which was given to the jury in the following

14—66

words: " 'If the jury believe from the evidence that the plaintiff, Barksdale, knew of the defects alleged to be in the lumber car—the train he was operating—and the manner in which the lumber referred to in the complaint was loaded, and voluntarily operated the same, and took the risks of injury therefrom, then he cannot recover.' I charge you that, taken in connection with what I have heretofore said to you along that line." As has been remarked, what had been before said on this point had by implication negatived the idea that there was any duty of the plaintiff to cease to operate dangerous machinery, if he had discovered the danger after leaving Augusta. The general statement made in this respect, standing alone, might be construed to cover the duty of the plaintiff in this regard both before he had commenced his trip and while he was on his journey, for it might refer to one as well as the other; but when it is remembered that the presiding Judge had before practically excluded from the jury the consideration of any duty of the plaintiff to abandon a car discovered on the trip to be dangerous, I think the jury must reasonably have supposed he intended this statement also to refer only to any discovery of defects made before leaving Augusta. This conviction is much strengthened when we observe the presiding Judge expressly says this instruction is given in connection with a portion of the charge, which certainly tended to lead the jury to think they were to consider only such knowledge of defects as plaintiff had before leaving Augusta. The general statement of the law of contributory negligence could not cure the error, because it consisted in using language tending to produce the impression on the minds of the jury that this general law did not require the plaintiff to abandon a dangerous car unless he had discovered its defects before it was turned over to him. I do not lose sight of the fact that the defense of assumption of risk was not pleaded by defendant, nor of the distinction between that defense and contributory negligence. In *Bodie* v. *Ry. Co.*, 61 S. C., 478, 39 S. E., 715, Associate Justice Jones remarks: "The doctrine of as-

sumption of risk by the employee is distinct from the doctrine of contributory negligence, although there may arise a certain condition of facts capable of supporting either inference." This is followed by as clear a distinction between the two defenses as the nature of the subject will allow, concluding with this statement: "When, therefore, a case arises in which it is shown (upon proper pleadings) that the employee has assumed the risk from which the injury arose, or what is the same thing in effect, has waived his right to hold the employer responsible for the risk, the employee's action is defeated because of his agreement and not because of negligence. 'Contributory negligence,' on the other hand, rests in the law of torts, as applied to negligence; and when such defense is established, the plaintiff's action is defeated, not because of any agreement, express or implied, but because his own misconduct was a proximate cause of the injury." The defense of assumption of risk and contributory negligence are so similar that they may fade into each other. The broad line of the difference is to be kept in view, but refined distinctions between them do not advance the administration of the law. Nearly every case of contributory negligence on the part of an employee involves in a general sense some assumption of risk, because in order to be guilty of contributory negligence there must be the risk of apparent danger. When a servant risks this danger in the discharge of duty imposed on him in the course of usual duty, this would be, in an exact sense, a case of assumption of risk. But if he improperly risks the danger, which becomes the proximate cause of the injury, in doing that which is not imposed on him in the course of his usual duty, it would be contributory negligence. *Erskine* v. *Beet Sugar Co.,* 71 Federal Reporter, 270; *Baird* v. *Ry. Co.,* 61 Iowa, 361; *Kilroy* v. *Foss,* 161 Mass., 138; *Le Bahn* v. *R. R. Co.,* 80 Hun. (N. Y.), 116; *So Pacific Co.* v. *Pool,* 160 U. S., 438. It is to be observed in the case now under consideration, the conductor had complete control of the train. The evidence on this point was to the effect that, so far from the

company imposing upon him any duty to carry with his train a dangerous or unsafe car, he was directed by the company to cut out any car he regarded in that condition. Under these circumstances, the vital inquiry is, whether he was guilty of contributory negligence, in carrying forward the car, after he discovered the defects, of his own will, without any obligation being imposed upon him by the company to do so. If he did this without good reason, it would not be the assumption of a risk imposed in course of his employment, but carelessness and misconduct on his part in voluntarily carrying with the train a defective car. For this reason I venture to think the defense of contributory negligence was the appropriate one under which this issue should have been submitted to the jury. As we have seen, if the plaintiff discovered defects in the car after he had started on his trip, and they were such as to induce the belief in his mind that the car was dangerous or unsafe, or if they would have made the car appear unsafe or dangerous to a man of ordinary prudence and reason in like situation, and if the plaintiff was in charge of the train, and had the opportunity to drop the car before the accident, he would then be operating a dangerous or unsafe car in his own charge, and if there was a voluntary operation by him of a dangerous or unsafe car producing the injury, or contributing to it as a proximate cause, without which it would not have occurred, the plaintiff could not recover. The portions of the charge above quoted should, in my opinion, have been accompanied by a statement of this principle of law. The fourth exception and subdivisions (c) and (d) of the third exception cover this error, and I think they should be sustained, and a new trial ordered.

MR. CHIEF JUSTICE POPE *concurs.*

MR. JUSTICE GARY *dissenting on one point.* The assignments of error which, in the opinion of Mr. Justice Woods, should be sustained, are subdivisions (c) and (d) of the third

exception, and the fourth exception.   They are as follows:
"3.  Because the presiding Judge erred in charging
the jury as follows: 'If it was a rule of the company
for the cars to be made up by the train master in the
city of Augusta and turned over to the conductor who was
to take them out of the city of Augusta, and that conductor
had nothing to do with the making up of the train there, then
the conductor of the train had a right to assume that suitable
and safe appliances had been furnished him, and that the
cars had been properly loaded, when he took charge of them.
If it was the duty of the conductor to make up his train in
the city of Augusta and see that everything was in order, and
that the cars were properly loaded, and if the plaintiff in this
case was the conductor, and if it was his duty in the city of
Augusta to see that everything was in good shape—in good
order—when he left there, if he had knowledge of the fact
that the cars were unsafe and unsuitable and dangerous—if
he had knowledge of that fact and moved those cars, then he
assumed the duties incident to his office, being conductor,
and he cannot recover.   But if the duty was imposed upon
the railroad authorities, and such authorities loaded that car
and turned it over to him, and it was not his duty to investi-
gate as to whether everything was safe and suitable and in
good order, the train which was turned over to him in the
city of Augusta loaded by the officials there, then the con-
ductor had a right to assume that safe and suitable appli-
ances had been furnished, that the car turned over to him
was properly loaded, and that the machinery to run it was
safe, and that the appliances were safe and suitable.'   The
error (c) being the burden of defendant's defense was what-
ever may have been the obligations of the plaintiff in relation
to taking the train out from the city of Augusta—he was
bound to know as conductor, and did know very soon after
he started from Augusta, of the defects complained of; and
because of such knowledge and because of his conduct with
reference to such alleged defects, after knowledge of them,
he was not entitled to recover, and the portion of the charge

here complained of ignores the question of the existence of any defects after leaving the city of Augusta, and the obligation of the plaintiff with reference thereto, and it was, therefore, erroneous and greatly prejudicial to the defendant. (d) The charge, in effect, charged the jury that if it was not the duty of the plaintiff as conductor to see that the cars were safe and properly loaded when he left Augusta, no duty in this regard was afterwards placed upon him, and during the entire trip he might assume such cars and such loading continued to be safe and proper.

"4. Because the presiding Judge, while instructing the jury as to the law in relation to the knowledge of employees of defects in machinery committed to them, erred in charging as follows: 'If the conductor here was injured, and if he had knowledge of any defect or unsafe character or condition, machinery, ways and appliances, and if he knew that the train of cars or anything appertaining to it was dangerous, and he voluntarily took charge of that train, then he assumed the risks incident to his position, and he cannot recover.' The error being in instructing the jury, in effect, that a conductor would be prevented from recovering, if, having such knowledge, he voluntarily took charge of the defective train—and inferentially, that such knowledge acquired after beginning to operate such train, however long before the accident, would have no such effect in preventing a recovery."

His Honor, the presiding Judge, charged the following requests presented by the defendant: " '1. If the jury believe from the evidence that the plaintiff, Barksdale, knew of the defects alleged to be in the lumber car—the train he was operating and the manner in which the lumber referred to in the complaint was loaded—and voluntarily operated the same and took risks of injury therefrom, then he cannot recover.' I charge you that, taken in connection with what I have heretofore said to you along that line.

" '2. If the jury believe from the evidence that the injury of the plaintiff was caused by his own negligence and not

by the negligence of the railway company, then they must find for the defendant railway company.' I have already charged you that, and I re-charge it to you as good law.

" '3. If the jury believe from the evidence that the injury of the plaintiff, Barksdale, was directly caused both by the negligence of the railroad company and the negligence of the plaintiff, Barksdale, then the plaintiff cannot recover, and the verdict must be for the defendant railway company.' I have already charged you that, and I re-charge it to you."

His Honor concludes his charge as follows: "Now, gentlemen, if in your opinion the plaintiff here was injured by negligence and carelessness of the railway company and he did not contribute to his own injury, and the carelessness and negligence of the railway company was the direct and proximate cause of his injury, then your verdict will be for him in such sum as you think he has sustained, proportionate to the injury sustained by him. If you believe the plaintiff was injured and that injury was brought about by his own carelessness and negligence, then your verdict will be for the defendant. Or if you believe the railway company was negligent, and that negligence was the direct and proximate cause of the injury of the plaintiff, and the plaintiff was also negligent, and his negligence contributed as a direct and proximate cause of the injury, and the injury sustained by him, if any were sustained by him, was an admixture of negligence of the railway company and the plaintiff himself, then your verdict will be for the defendant." The charge of the Circuit Judge must be viewed in two lights—first, as charging the law generally that was applicable to the case, and, second, as charging specifically upon the questions presented by the requests. Furthermore, the entire charge must be considered in determining whether any particular portion thereof was erroneous. After quoting that portion of the charge set out in the third exception commencing with the words, "If it was the duty of the conductor," Mr. Justice Woods uses this language: "This was all appellant could ask as to the plaintiff's duty before leaving Augusta, but it does

not cover his duty after the discovery of defects on the journey. The portion of the charge quoted would, I think, convey the impression to the jury, that the plaintiff might continue to assume the car was not dangerous after he had discovered on his journey the alleged defects and it negatives the idea that he owed any duty to exercise judgment or discretion as to whether he should undertake to carry the car on after he knew of the defects." Conceding that this portion of the charge, standing alone, would convey the impression mentioned by Mr. Justice Woods, and that it should have been accompanied by a statement of the principles announced in his opinion, let us see if the principles were elsewhere charged. The defendant's first request was: "If the jury believe from the evidence that the plaintiff, Barksdale, knew of the defects alleged to be in the lumber car—the train he was operating—and the manner in which the lumber referred to in the complaint was loaded, and voluntarily operated the same and took the risks of injury therefrom, then he cannot recover." The presiding Judge said: "I charge you that, taken in connection with what I have heretofore said to you along that line." Mr. Justice Woods, in considering the exception assigning error in the charge, holds that it was not erroneous, and we concur with him in this conclusion. If, then, there was no error in the manner in which the request was charged, we fail to see how the jury could have been misled into supposing that the plaintiff could recover, if he knew of the defects and voluntarily operated the train. When that portion of the charge set out in the exception is considered in connection with the whole charge, and with the request which was specifically charged, it could not have misled the jury.

The Court being equally divided upon the matter discussed above, the judgment of the Circuit Court must stand affirmed under the Constitution.

MR. JUSTICE JONES, *concurring with* MR. JUSTICE GARY. I concur in the view of Mr. Justice Gary, that the judgment

of the Circuit Court should be affirmed. As shown in the case of *Bodie* v. *R. R. Co.,* 61 S. C., 478, 39 S. E., 715, the defenses of "assumption of risk" and "contributory negligence" are distinct. Being affirmative defenses, they must be pleaded to be available—13 Ency. Pl. & Pr., 914. The defendant not having pleaded "assumption of risk," it did not have any right to have the jury instructed with reference to such matter. In so far, therefore, as the Circuit Court undertook to instruct the jury in that regard, the appellant received favor and not prejudice, and cannot complain if the Court failed to cover every aspect of the doctrine of "assumption of risk." The fact that a servant remains in the master's service after knowledge of the defective or unsafe condition of the machinery or appliances furnished him to operate, bears upon the defense of "contributory negligence" as well as upon the question of "assumption of risk;" but in neither case is it proper to instruct the jury as matter of law that a servant cannot recover for injuries sustained in the operation of defective or unsafe machinery or appliances after knowledge of such condition, but in all such cases it must be left to the jury, from all the circumstances, to determine the proper inference to be drawn from the continuance to operate after knowledge of the defective or unsafe condition. The charge of which the complaint is made, stated correctly, is as follows: "If it was the duty of the conductor to make up his train in the city of Augusta, and see that everything was in good order and that the cars were properly loaded, and if plaintiff in this case was the conductor, and it was his duty in the city of Augusta to see that everything was in good shape—in good order—when he left there; if he had knowledge of the fact that the cars were unsafe and unsuitable and dangerous, if he had knowledge of that fact and moved those cars, then he assumed the duties incident to his office, being conductor, and he cannot recover. But if the duty was imposed upon the railroad authorities, and such authorities loaded that car and turned it over to him, and it was not his duty to investigate as to whether everything was

safe and suitable and in good order, the train which was turned over to him in the city of Augusta, loaded by the officials there, then the conductor had a right to assume that safe and suitable appliances had been furnished; that the car turned over to him was properly loaded, and that the machinery to run it was safe, and that the appliances were safe and suitable. Now, under the Constitution of this State, a conductor of a train is excepted from other employees of the railroad company. If the conductor here was injured, and if he had knowledge of any defective or unsafe character or condition of the machinery, ways or appliances, and if he knew that the train of cars or anything appertaining to it was dangerous or unsafe, and he voluntarily took charge of that train, then he assumed the risks incident to his position, and he cannot recover. If the cars were unsuitable and the appliances were unsuitable and unsafe, and he had no knowledge of the danger he was running; or if he had no knowledge of the fact that they were unsuitable or unsafe; if they were not plain to the eye but the defects were hidden, then he would be entitled to recover, provided you think he was injured through the carelessness and negligence of the railroad, and he didn't by his own act contribute towards his injury. The defendant has requested me to charge you the following proposition of law: '1. If the jury believe from the evidence that the plaintiff, Barksdale, knew of the defects alleged to be in the lumber car—the train he was operating—and the manner in which the lumber referred to in the complaint was loaded, and voluntarily operated the same and took the risks of injury therefrom, then he cannot recover.' I charge you that, taken in connection with what I have heretofore said to you along that line." This charge, it seems to me, was too favorable to the appellant—first, in submitting to the jury whether plaintiff has assumed the risks in continuing to operate the cars after knowledge of their unsafe condition, when no such defense had been pleaded; and second, in so far as the charge might be construed as relating to the plea of contributory negligence, in

denying plaintiff's right to recover, if he voluntarily took charge of the train and operated it after knowledge that it was unsafe, instead of leaving it to the jury to decide whether such facts under the circumstances warranted a conclusion that the plaintiff thereby proximately contributed to his injury.  But when the whole charge to the jury is considered, and especially that portion relating directly to the matter of contributory negligence, it is manifest that defendant's issue of contributory negligence was fully, fairly, correctly and explicitly submitted to the jury.  It must also be observed that the objection urged against the charge relates to a mere omission to charge as to a matter not brought to the attention of the Court by a specific request to charge the matter omitted.

Therefore, while I concur in the views of Associate Justice Woods, that the motion for a nonsuit was properly refused, I agree with Mr. Justice Gary, that the judgment of the Circuit Court should be affirmed.

*Submitted on printed Briefs.—R.*