### 7056

### HALL v. NORTHWESTERN R. R. CO.

1. CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISKS.—NONSUIT moved on grounds of assumption of risk and contributory negligence properly refused, as the Court could not conclusively decide from the evidence that plaintiff, a freight train conductor, assumed the risk or was guilty of contributory negligence in coupling the cars by going between them when he could make the coupling in no other way on account of a defective coupling appliance, in such an emergency as would justify a reasonably prudent man in going between the cars, nor could the Court conclusively infer from the circumstances that it was contributory negligence for him to go a few inches too far after getting between the cars in making the coupling.
   *Lyon* v. *Ry.*, 77 S. C., 328, *distinguished from this.*

2. ASSUMPTION OF RISKS.—A CONDUCTOR of a train of cars only assumes those risks from operating defective machinery or appliances as would appear to a man of ordinary prudence and reason to be dangerous or unsafe.

3. NEW TRIAL.—A Circuit Judge has no power to grant a new trial *nisi* because a verdict is excessive upon such conditions as would deprive the losing party of his right of appeal or any other legal right in order to procure the benefit of the reduction of the verdict.

Before PRINCE, J., Kershaw, spring term, 1907. Modified.

Action by W. J. Hall against Northwestern Railroad Company of South Carolina. From judgment for plaintiff, defendant appeals.

*Messrs. Lee & Moise* and *Clark & von Tresckow,* for appellant. *Messrs. Lee & Moise* cite: *As to assumption of risks:* 77 S. C., 328; 184 N. Y., 148; *Gadsden* v. *Catawba Power Co.;* 78 S. C., 374, 472; 72 S. C., 389; 16 S. C., 203; 44 S. C., 315; 55 S. C., 483; 58 S. C., 491; 54 S. C., 553; 69 S. C., 480; 74 S. C., 489; 72 S. C., 237, 264. *If plaintiff assumed a risk, with knowledge of the same, he cannot recover:* 61 S. C., 478; 66 S. C., 211, 302. *New trial should be granted where the jury disregards the instructions of the Judge:* 68 S. C., 523; 19 S. C., 489; 16 S. C., 14. *Judge may grant a new trial for excessive damages:* 51 S. C., 395; *but has no power to couple it with onerous conditions:* 131 U. S., 22; 124 U. S., 510; 130 U. S., 69; 37 Mo. App., 517; 46 N. Y. Sup. Ct., 76; 8 Wend., 47; 81 Cal. R., 370; 48 Wis., 375.

*Messrs. Clark & von Tresckow* cite: *Where a servant knows of a defect, but assumes the risk, he cannot recover:* 72 S. C., 346; 21 S. C., 548; 55 S. C., 101; 72 S. C., 234-65; 76 Mich., 400; 14 S. W. R., 242; 65 N. W. R., 550; 33 Kan., 660; 83 Va., 640; 88 Ga., 225; Pierce on Railroads, 379; 72 S. C., 346. *Is there any difference between assumption of risks and contributory negligence, and is a charge applicable to the one applicable to the other?* 61 S. C., 478; 72 S. C., 346; 21 S. C., 547; 55 S. C., 101, 453; 49 L. R. A., 51; 30 N. E., 366; 58 Mo. App., 281; 57 Ill. App., 56; 17 Atl., 491; 32 Atl., 965; 37 Am. R., 684; 84 Ind., 50; 27 S. W., 825; 11 Ill. App., 104; 26 L. T. N. S., 851; 3 N. W., 43; 15 S. W., 895; 2 S. W., 595; 37 N. E., 365; 32 Atl., 965; 1 Ill. App., 517; 35 N. E., 117; 47 N. E., 214; 33 N. W., 908; 21 S. W., 706; 26 Ill App., 356; 23 S. W., 642; 18 S. W., 609; 28 N. W., 56; 24 Atl., 487; 41 N. Y. Supp., 633; 51 N. Y. Supp., 209; 17 S. E., 386; 27 S. W., 825. *Circuit Judge has no power to impose onerous burdens in granting a new trial nisi:* 54 S. C., 234; 81 Cal., 370; 37 Mo. App., 517; 48 Wis., 375.

*Messrs. Kirkland & Smith,* contra, cite: *Proximate cause is or jury:* 25 S. C., 128; 62 S. C., 135. *Jury must say if servant assumed risks by remaining at his employment after discovering defect in machinery:* 66 S. C., 217; 55 S. C., 101; 52 S. C., 100; 48 S. C., 379; 18 S. C., 281; 8 Allen, 441; 51 S. C., 233; 50 S. C., 362; 21 S. C., 547; 66 S. C., 487; 62 S. C., 475; 68 S. C., 69; 60 S. C., 17; 66 S. C., 317; 72 S. C., 80; 75 S. C., 303; Con., art. IX, sec. 15; 68 S. C., 494; 71 S. C., 79; 75 S. C., 150; 89 Mo., 600; 76 Pa., St., 389. *Whether plaintiff was negligent was for jury:* 20 Ency., 149, 150; 85 Va., 319; 133 N. Y., 575. *Contributory negligence cannot be imputed to a servant remaining at his post to protect the lives of others:* 20 Ency., 151-1; 7 Ency., 394-5-6; 143 Ill., 258; 32 Am. R., 796; 45 Kan., 256; 46 Am. R., 173; 58 Am. R., 463; 33 Am. St. R., 690; 61 Ga., 279; 29 Am. St. R., 553; 54 Am. R., 1; 132 Ind., 199; 50 Wis., 384; 85 Va., 319. *Enlarging a request does not amount to refusing it:* 75 S. C., 390. *Conditions imposed by Judge on order granting new trial nisi do not make the order void:* 4 Rich., 1; 23 Pa. St., 138; 54 Pac., 988; 75 N. W., 545; 52 Neb., 553; 41 Mich., 31; 104 Cal., 501; 99 N. W., 630; Graham and Waterman on New Trials. 603; 4 Ala., 317; 75 Pa. St., 1072.

November 16, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiff, a freight conductor on the defendant's railroad, went between two freight cars for the purpose of coupling them, was caught between the buffers and received personal injuries. On the allegation that his injuries were due to the negligence of the defendant railroad company, a verdict of fifteen thousand dollars was recovered. The Circuit Judge refused a motion for nonsuit, but granted a conditional order for a new trial. The defendant's counsel, by their exceptions, submit that the motion for nonsuit should have been granted; that there

were errors in the charge to the jury; and that the conditions attached to the order for new trial were not authorized by law.

We first consider the refusal to grant a nonsuit. The grounds of the motion were that the plaintiff knew the danger of attempting to make the coupling by going between the cars, and could not recover: (1) Because he assumed the risk of the attempt; and (2) because he was guilty of contributory negligence in taking the risk. This is one of that class of cases where by reason of the allegation that the danger was so obvious and imminent that no prudent servant would have undertaken to make the coupling; the defenses of contributory negligence and assumption of risk approach so closely to each other that distinction between them is almost impossible, in the practical application of the law. In *Bodie* v. *C. & W. C. Ry. Co.*, 61 S. C., 468, 478, the general distinction is thus stated: " 'Assumption of risk' rests in the law of contract, and involves an implied agreement by the employee to assume the risks ordinarily incident to his employment, or a waiver, after full knowledge of an extraordinary risk, of his right to hold the employer for a breach of duty in this regard. * * * 'Contributory negligence,' on the other hand, rests in the law of torts, as applied to negligence, and when such defense is established the plaintiff's action is defeated, not because of any agreement, express or implied. but because his own misconduct was a proximate cause of the injury." In further elaboration of the distinction, it is said in *Barksdale* v. *C. & W. C. Ry.*, 66 S. C., 204, 211, 44 S. E., 743: "Nearly every case of contributory negligence on the part of an employee involves in a general sense some assumption of risk, because, in order to be guilty of contributory negligence, there must be the risk of apparent danger. When a servant risks this danger in the discharge of duty imposed on him in the course of usual duty, this would be, in an exact sense, a case of assumption of risk. But if he improperly

risks the danger, which becomes a proximate cause of the injury, in doing that which is not imposed on him in the course of his usual duty, it would be contributory negligence." Under the law, as thus laid down, neither the defense of assumption of risk nor contributory negligence was conclusively made out, either by the evidence of the plaintiff or the evidence on both sides taken together.

The testimony tended to show these conditions: Camden and Sumter were the terminal points of the defendant, Northwestern Railroad Company. It is customary for railroads to have car inspectors at terminal points, charged with the duty of seeing that cars were in fit and safe condition for use; but the defendant failed to provide for such inspector. It was also customary to provide for the crew of a freight train three brakemen—that force being necessary, besides the engineer and conductor; but the plaintiff was allowed only two brakemen on his train, though he had complained to the president of the road that two brakemen were insufficient, and had been promised more men. There were no printed or written rules of the road furnished to employees; but it was the duty of the plaintiff to shift and move cars at Camden, as ordered by the Camden freight agent, the plaintiff determining for himself the manner of doing the work. On 23d November, 1903, after the plaintiff's train was made up at Camden, and was about to depart on its schedule time, the freight agent directed the plaintiff to place two empty cars on the track, known as the oil mill track. The two cars to be moved were on the same track, but were not coupled together. The plaintiff, at the rear of the train, signalled the engineer to move the train and make the coupling. Seeing that the train had not been moved against the rear car with sufficient force to make the coupling automatically, plaintiff tried to use the lever provided for coupling cars, without going between them, but the lever failed to work. He then went between the cars, and, walking with the slowly moving train, undertook to make the

coupling with his hand by lifting the latch pin.   The plaintiff testified he had made couplings this way hundreds of times before with safety; but on this occasion he inadvertently went in a little farther than was necessary, and his left side was caught between the buffers.   The plaintiff admitted he knew there was danger in going between the cars to couple; but he testified he made the effort because the last car was on a down grade, and he had reason to apprehend that if he did not stop it by coupling it the car would run down the grade and off the track.   In addition to this reason for attempting to make the coupling, as the plaintiff testified, a part of his train was on the main line of the Southern Railway Company, and its passenger train being about due, and his own train unguarded for lack of a sufficient crew, the plaintiff considered it important to get his train out of the way.

There is force in the argument that the plaintiff voluntarily assumed the risk of the dangers of his employment, due to lack of inspection of the cars, because he had continued in the service of the defendant with full knowledge that the cars were not inspected.  *Wofford* v. *Clinton Cotton Mills,* 72 S. C., 348, 51 S. E., 918, and cases cited. Decision on the point, however, is not necessary in the consideration of the motion for nonsuit, because there was evidence to go to the jury on other issues of negligence and assumption of risk.   The evidence is very far from showing that the plaintiff's contractual relation of service contemplated that, in the usual course of his service, he should assume at his own peril the risk of coupling cars by going in between them and lifting the latch pin with his own hands. Indeed, we do not understand the defendant's counsel to contend that assumption of risk arose in that way.   It is true the plaintiff says he had so made the coupling a thousand times with safety, but that such a mode of coupling was not to be expected as usual is shown by the fact that the defendant's cars were equipped with levers to be operated

from the side of the car. But there was evidence that it
was the duty of the plaintiff, in the course of his usual
service, to couple cars, and that the performance of this duty
was necessary to the service. The position of defendant is,
as we understand it, that coupling cars is a duty imposed by
plaintiff's usual course of service, and if the negligence of the
defendant be assumed in imposing the urgent duty on this
occasion of making the coupling without a safe means of
performing the duty, yet the plaintiff at the moment was
well aware of the danger, and, in choosing to perform it,
assumed the risk, and thus waived his right to have provided
a safe means.

The defendant's charge of contributory negligence
depends on viewing the same act of the plaintiff from a dif-
ferent standpoint. Stated in short, the argument is this:
The plaintiff was required in the course of his service to
couple cars, but by the use of a lever and not by going
between the cars and using his hands, and hence it was neg-
ligence to attempt to move the coupling in that way; and,
further, even if defendant's negligence, in not supplying a
workable lever, made it necessary for plaintiff to go between
the cars, he could, nevertheless, have coupled the cars in
that position without being caught, if he had not negligently
gone too near the buffers. In this view the defendant asked
the Court to find contributory negligence of the plaintiff as
a necessary sequence: (1) From the negligent act of going
between the cars, where his service did not require him to
go; and (2) from the negligent act in going so far in that
he was caught. Under the evidence of the plaintiff, in this
case, that he had made such couplings a thousand times in
safety, it might be doubtful, as a matter of law, whether it
would have been contributory negligence for the plaintiff
to go between the cars to make a coupling, even where there
was no emergency. But assuming that such acts would be so
held under ordinary circumstances, or taking the other view
and considering the evidence, such as would under the ordi-

nary circumstances admit of no other inference than that
the plaintiff had assumed the risk, and was, therefore, pre-
cluded from recovery, such inference would not be admis-
sible under the other facts of the case. The plaintiff had
exhausted the safest means of making the coupling by
attempting to use the lever provided by defendant, which
proved to be out of order. If the presence of his train on
the main track of the Southern Railway was not positively
dangerous to the passenger train then expected, it was an
obstruction which it was his duty to remove. Much more
important than this was his anxiety, that unless he should
be able to stop the car by making the coupling it would run
off the track, and thus involve the defendant, his employer,
in loss. It was for the jury to say whether these conditions
amounted to such an emergency as would justify or excuse
a man or ordinary prudence and judgment in undertaking
to make the coupling in the way he did. This is the pivotal
inquiry in such cases under the defense of assumption of
risk (*Ivy* v. *Wilson,* Cheves, 74; *Barksdale* v. *Ry. Co.,
supra*), as well as under the defense of contributory negli-
gence. *Thompson* v. *Seaboard Air Line Ry., ante,* 333.

Only one remark need be made as to the application of the
following clause of art. IX, sec. 15 of the Constitution:
"Knowledge by any employee injured of the defective or
unsafe character or condition of any machinery, ways or
appliances, shall be no defense to an action for injury caused
thereby, except as to conductors and engineers in charge of
dangerous or unsafe cars or engines voluntarily operated by
them." Assuming that the car was dangerous or unsafe
for lack of the lever, it was a question for the jury to decide
whether the plaintiff "voluntarily" operated it or did so
under the constraint of a duty to make such an effort in an
unforseen emergency as a reasonably prudent man would
make for the protection of his employer's property.

There being evidence of the negligence of defendant in
not providing a lever that would work, and in not having

provided against such a defective appliance by inspection of the cars, and evidence from which the jury might reach the conclusion that there was such an emergency as would justify a man of reasonable prudence and discretion in going between the cars to make the coupling, when he could make it in no other way, it follows that the motions for nonsuit and for new trial could not be granted on the ground that the evidence conclusively showed contributory negligence or assumption of risk on the part of the plaintiff in going between the cars. Nor could either of these motions be granted on the ground that the plaintiff, after getting between the cars, inadvertently went a few inches farther in than was necessary, so that he was caught between the buffers. If the defendant, by its negligence, created an emergency which justified the plaintiff in going between the cars, it cannot maintain the position that negligence must be imputed to the plaintiff as a matter of law, because of a slight miscalculation or inadvertence in the unusual position of danger. The servant in entering the employment of the master, it is true, assumes the risk of his own errors committed in his usual service. *Green v. So. Ry. Co.*, 72 S. C., 402, 52 S. E., 45. But where by the negligence of the master he is brought into a position of unusual peril, in the effort to perform one of the duties of his service, it is generally a question of fact for the jury to determine whether the injury arose from an error or miscalculation of the servant, due to his negligence, or to such mistake or inadvertence as a reasonably prudent man might have fallen into in the servant's situation. Of course, there are cases in which only the inference of negligence could be drawn, but this is not one of them, for, engaged as the plaintiff was, a prudent and careful man might well have made the mistake of getting a few inches too near the coupling and between the buffers. The facts of this case bring it within the principle of *Schlemmer v. Buffalo etc. Ry. Co.,* 205 U. S., 1, 51 L. Ed., 681. It is clearly distinguished from *Lyon* v.

*C. & W. C. Ry. Co.*, 77 S. C., 328, where a flagman was injured in doing a negligent act, not demanded nor called for by the conductor, and which he well knew was not intended by the order he had received.

Exception is taken to this instruction to the jury: "But if the servant knows of a patent defect in the appliance, which will make it dangerous for him to operate that appliance, then it becomes a question of fact for the jury whether or not he assumed the risk, or whether or not a man of ordinary prudence would have undertaken to operate the appliance with knowledge of its defect, which rendered it dangerous; whether or not he knew it was dangerous to do it; if he did, and if a man of ordinary prudence would not have acted as he did, having due regard for his own safety, he is guilty of negligence; if that negligence contributed as a proximate cause of his injury, he cannot recover, however painful his injuries may be, however permanent." The error assigned is in making assumption of risk to depend on reasonable care. The exception is disposed of by this language of the Court, in *Barksdale* v. *C. & W. C. Ry. Co., supra:* "To defeat the claim of a conductor or engineer for injury in cases of this character, the knowledge must be of defects which the conductor or engineer believed to be dangerous or unsafe, or which he ought to have regarded dangerous or unsafe, in the exercise of ordinary prudence and reason. Any other view would not only be straining the meaning of words, but would be unreasonable and result in an intolerable hardship both to the public and those charged with the conduct of roads; for it would require an engineer or conductor, upon discovery of any slight defect of machinery, to stop his train or proceed at his peril." Furthermore, as we have pointed out, whether the exigency was such as to constrain a man of ordinary prudence to operate even a dangerous car was a question for the jury.

The remaining exceptions relate to the power of the Circuit Judge to impose the conditions appearing in his order granting a new trial. As the point is important, we set out the order in full: "This was a motion for a new trial, made upon the minutes of the Court at the recent spring term of Court for Kershaw county. The jury had rendered a verdict in this case for plaintiff for fifteen thousand dollars. The motion for a new trial is based on the grounds hereto attached. The first, second and third grounds are, after mature consideration, overruled. The fourth ground, which is as follows: 'Because the verdict of the jury was capricious and excessive,' has given me no little concern. I cannot hold that the verdict was capricious, but as to whether or not it was excessive is a matter that has caused me considerable thought. After full deliberation, I have concluded to cut this verdict, provided the plaintiff is to get the amount indicated by me without further expense and litigation.

"It is, therefore, ordered that if the defendant, within thirty days from the date of the filing of this order, tenders to plaintiff the sum of ten thousand dollars and costs, in full satisfaction of said verdict, and if the plaintiff declines to accept said amount and release the defendant upon record from all further liability for said verdict, then a new trial is ordered; but if defendant fail or decline, within said period of time, to make the tender aforesaid, then a new trial be, and is hereby, refused.

"The tender is to be made to the plaintiff through his attorneys, and the plaintiff is to be allowed twenty-four hours in which to decline or accept the tender, pending which twenty-four hours the tender is to be kept good, unless sooner declined by the plaintiff."

The statute provides: "The Circuit Courts shall have power to grant new trials in cases where there has been a trial by jury for reasons for which new trials have usually been granted in the Courts of law in this State." Civil

Code, sec. 2734. The order puts the defendant in the dilemma of tendering the amount fixed by the Circuit Judge and giving up his statutory right of appeal on the penalty of having to pay the excessive verdict, if his appeal should fail. Indeed, it is manifest from the language of the order that the Circuit Judge intended that the defendant should have the benefit of the reduction of the verdict only on condition of giving up the right of appeal and paying within thirty days. The question is, whether the imposition of such terms was a lawful exercise of judicial discretion.

The power to grant new trials, now vested in the Circuit Court, was formerly exercised by the Court of Appeals. It is well settled that this power extends to the granting of new trials for excessive verdicts in actions of tort for unliquidated damages, on condition that the plaintiff shall refuse to remit the amount adjudged to be excessive. *Nettles* v. *Harrison,* 2 McC., 230; *Davis* v. *Ruff,* Cheves, 17; *Fripp* v. *Martin,* 1 Speer, 236; *Warren* v. *Lagrone,* 12 S. C., 51; *Finch* v. *Finch,* 21 S. C., 342; *Beaudrot* v. *Ry. Co.,* 69 S. C., 160, 48 S. E., 106. It may be regarded settled, further, by the case of *Laney* v. *Bradford,* 4 Rich., 1, that the power extends to fixing other conditions in addition to a refusal of the plaintiff to remit the portion of the verdict adjudged to be excessive. But the case is by no means conclusive of the question here, because there the Court in imposing conditions carefully preserved the legal rights of the parties. It is to be borne in mind, too, that there could be no appeal in that case, because the order was made by the Court of last resort, and, therefore, the case is not an authority for the proposition that conditions of granting a new trial for excessive damages may be imposed, which take away the right to appeal for alleged errors of law in the course of the trial, or require the defendant to waive any other statutory right.

The granting or refusing a motion for a new trial, made on the ground that the verdict is excessive, is within the discretion of the Circuit Judge, and this Court will not dis-

turb his conclusion unless the order was based on an error
of law.    The discretion of the Circuit Judge must, however,
be controlled by these established principles, recognized by
the cases above cited: First. A new trial should not be
granted merely because the Judge would have found a less
amount than that found by the jury, unless the opinion of
the Judge amounts to a clear and fixed conviction that injus-
tice has been done by an excessive verdict.    Second. When
the Circuit Judge has a clear conviction that injustice has
been done by an excessive verdict, then it is his duty to
relieve from the injustice by ordering a new trial, unless
the plaintiff remits the excess.    This being the judicial duty
of the Circuit Judge, the party aggrieved has the legal right
to have that duty performed by him.    Hence, when, in the
exercise of his judgment and discretion, the Circuit Judge
makes an order that a new trial should be granted unless
the plaintiff remits so many dollars from the verdict, that is
an adjudication that the verdict is by that amount clearly
excessive, and that the defendant is of legal right entitled
to be relieved from that excess or have a new trial.    This
was undoubtedly the adjudication of Judge Prince, and this
was the right of the defendant.    We do not doubt that
Judge Prince might have provided in the order that the
defendant should do anything necessary to preserve the
rights of the plaintiff as a condition of the new trial, such,
for example, as requiring the defendant to make secure the
reduced amount, if it should stand.    But that is a very dif-
ferent thing from making the defendant's adjudicated right
to a new trial *nisi* depend on his surrender of his constitu-
tional and statutory right of appeal to the Supreme Court.

  It is true, the order for a new trial was a benefit bestowed
upon the defendant, but it was a benefit to which he was
entitled, not by grace, but by right, as soon as the verdict
was adjudged excessive; and it cannot be made a condition
of the enjoyment of this right that he shall surrender his
other right to appeal to the Supreme Court on the ground

of error committed in the course of the trial. The principle
we have stated is well supported by authority. As was well
said by the Supreme Court of California, in a very similar
case, it was not the fault of the defendant that the jury
found an excessive and unjust verdict, and the defendant
should not be punished for it by being deprived of his right
of appeal. *Gardner* v. *Tatum,* 22 Pac., 880. While the
precise point was not involved, the opinion of the Court in
*Kennon* v. *Gilmer,* 131 U. S., 22, 33 L. Ed., 110, seems to
accord with this conclusion. In *Schultz* v. *C. M. & St. P.
R. Co.* (Wis.), 4 N. W., 399, 904, in discussing an order
like this, the Court said: "The Court may grant or refuse a
new trial, or, in a proper case, may grant a new trial *nisi;*
but should do one thing or the other. It should not, as was
done in this case, require the prevailing party to remit a
portion of the damages awarded, and then deprive the other
party of the benefit of the reduction, unless he submits to
onerous terms. Had this defendant paid the $3,000 and
costs, and taken a discharge of the judgment, probably it
would thereby have lost the right to have the case reviewed
by this Court on appeal." In *Young* v. *Cowden* (Tenn.),
40 S. W., 1091, it is said the defendant cannot be required
to forego his appeal by the terms of an order for new trial.
We have examined the authorities cited by respondent's
counsel, and many others, but we have found no case where
a court of last resort has sustained such a condition as was
here attached to the order for a new trial..

The order of Judge Prince is adjudged to be erroneous
in imposing the condition that the defendant should tender
the reduced amount within thirty days from the date of the
order. The substantial effect is to modify the order so that
the defendant is adjudged to be entitled to a new trial,
unless the plaintiff shall within thirty days from the filing of
the remittitur in the Court of Common Pleas for Kershaw
county remit, by due entry on the record, the sum of five

thousand dollars. Upon such entry being so made, it is adjudged that the judgment of the Circuit Court be affirmed.