14302

TERRY v. ATLANTIC COAST LINE R. CO.

(186 S. E., 159)

Before SHIPP, J., Dillon, November, 1935.

Mr. Joe P. Lane, for appellant,

*Messrs. M. C. Woods* and *N. B. Hargrove,* for respondent,

June 1, 1936.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Appellant was employed as a section hand on the respondent's railroad. August 16, 1933, he and other employees under the supervision and control of a section foreman were engaged in exchanging rails; that is to say, taking up the worn rails, which were placed at the side of the roadbed, and new rails put in their place. While so engaged, plaintiff claims, as stated in his complaint, that he suffered an injury which caused a rupture from which he suffered, and continues to suffer, great pain, and which incapacitates him for active and hard physical labor. The above-stated things are set out in his complaint. He also alleges that he was required to do this labor without adequate assistance; that he did not realize until some days after he suffered the first pain the nature and cause of his pain, and so continued to work until the pain became so great he could not work any longer; that his injury was due to the fact that he was required to lift the heavy steel rails without adequate and proper assistance, "and was inhumanly overloaded."

For answer the defendant set up: First, a general denial; second, contributory negligence; and, third, assumption of risk.

The case came on for hearing by Judge Shipp, with a jury, at the November, 1935, term of the Court of Common Pleas for Dillon County.

At the conclusion of the testimony for the plaintiff, the defendant moved for a nonsuit on the ground that the injury, if any, was due to one of the risks of his employment which was assumed by him. After argument, his Honor granted the motion, and from the order of nonsuit this appeal comes to us, based upon two exceptions, which, however, raise but one question, and that challenges the correctness of the holding that the plaintiff is barred of recovery by the application of the doctrine of the assumption of risk.

The complaint sets out few of the facts upon which the plaintiff relies to sustain his case. The only testimony was given by him. From it and the allegations of the complaint one gathers that his contention is thus to be stated:

That the steel rails which he was required to assist in lifting and moving were 33 feet long and weighed 85 pounds to the yard, a total of 935 pounds; that it was the custom, ordinarily, to handle rails of this length with not less than eight men, and sometimes ten; that the rails were handled with "rail dogs," an iron or steel instrument with two handles, "one man takes one handle and another man takes the other." It "clamps" the rail; it is like a pair of tongs; "there were six of us; three on each side of a rail."

The plaintiff testifies that after he felt the pain he kept on working, thought he would be all right, and was afraid to complain; went to the doctor on the 20th. "He (the foreman) told us to hurry that morning, we didn't have time to slide them."

On cross examination the plaintiff said: "Been working on this section off and on for three years; * * * did any kind of track work, including swapping rails; * * * started to work that morning about 7:30; was hurt between 8 and 9, about 9; * * * been toting rails about an hour and a half before I was hurt; quit work about 10 o'clock."

It is conceded that the plaintiff was engaged in interstate work, and hence the action is within the provisions of the Federal Employers' Liability Act (45

U. S. C. A., §§ 51-59). It is therefore controlled by the decisions of the Federal Courts.

There is no testimony to show that the plaintiff complained of the conditions under which he worked; he did not ask for extra help; he did not complain that the burden of lifting the rails was too heavy, not even after he claims to have been hurt; there was no assurance that conditions would be bettered.

In the case of *Kohn v. McNulta,* 147 U. S., 238, 13 S. Ct., 298, 37 L. Ed., 150, this is said: "The intervener was 26 years of age. * * * He had been engaged in this work of coupling cars in the company's yard for over two months before the accident, and was therefore familiar with the tracks and condition in the yard, and not inexperienced in the business. * * * It is not pretended that these cars were out of repair, or in a defective condition, but simply that they were constructed differently from the Wabash cars, in that they had double deadwoods or bumpers of unusual length, to protect the drawbars. But all this was obvious to even a passing glance, and the risk which there was in coupling such cars was apparent. It required no special skill or knowledge to detect it. The intervener was no boy, placed by the employer in a position of undisclosed danger, but a mature man, doing the ordinary work which he had engaged to do, and whose risks in this respect were obvious to any one. Under those circumstances, he assumed the risk of such an accident as this, and no negligence can be imputed to the employer. *Tuttle v. Detroit, G. H. & M. R. Co.,* 122 U. S., 189, 7 S. Ct., 1166 [30 L. Ed., 1114]; *Ladd v. New Bedford R. Co.,* 119 Mass., 412 [20 Am. Rep., 331]."

In the case of *Butler v. Frazee,* 211 U. S., 459, 29 S. Ct., 136, 138, 53 L. Ed., 281, discussing the question of assumption of risks, the Court said: "Where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the com-

mon understanding, and the employee is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction, from the plaintiff's own evidence, the question becomes one of law for the decision of the Court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly"—citing *Patton v. Texas & P. R. Co.,* 179 U. S., 658, 21 S. Ct. Rep., 275, 45 L. Ed., 361, 364; and cases there cited.

In the *Butler case* the plaintiff sued for damages for injury to her hand caused by a mangle which she was operating in a laundry. The Court said: "The plaintiff was a person of mature years, intelligent, and of adequate experience. she had worked for some months upon this particular machine, and during that time it was always in exactly the same condition in which it was upon the day of the injury. The elements out of which the danger arose were plainly visible to her. * * * We think that it must be said, as matter of law, that she voluntarily assumed the risk of the danger"—citing the *Tuttle case, supra,* and five other cases.

In the case of *New York Central R. Co. v. White,* 243 U. S., 188, 37 S. Ct., 247, 251, 61 L. Ed., 667, L. R. A., 1917-D, 1, Ann. Cas., 1917-D, 629, the Court said: "By the common law the employee assumes the risks normally incident to the occupation in which he voluntarily engages: other and extraordinary risks and those due to the employer's negligence he does not assume until made aware of them, or until they become so obvious that an ordinarily prudent man would observe and appreciate them; in either of which cases he does assume them, if he continues in the employment without obtaining from the employer an assurance that the matter will be remedied; but if he receives such an assurance, then, pending performance of the promise, the employee does not, in ordinary cases, assume the special risk"—citing *Seaboard A. L. R. Co. v. Horton,* 233

U. S., 492, 504, 34 S. Ct., 635, 58 L. Ed., 1062, L. R. A., 1915-C, 1, Ann. Cas., 1915-B, 475.

The opinions of our own Court are no less explicit and clear than are those of the Federal Courts. It is thought that certain cases, as, for instance, *Bodie v. C. & W. C. R. Co.,* 61 S. C., 468, 39 S. E., 715, and Id., 66 S. C., 302, 44 S. E., 943, are in conflict with those cited above. Such, however, is not the case. In the *Bodie case,* and those which follow its lead, it was pleaded, and thereafter supported by testimony, that the employee complained of the inadequacy of the help furnished him with which to do the work required of him, and was promised more help, which was not furnished.

No such plea, nor any such proof, appears in the present case. On the contrary, appellant frankly admits that he made no complaint; he did not demur to the requirement to the work on the ground of an inadequate force to do the work, or for any other cause.

In the case of *Harmon v. S. A. L. Ry.,* 110 S. C., 153, 96 S. E., 253, it appears that plaintiff, with other employees of the railway company, was engaged in lifting heavy timbers and placing them on a dump car. He alleged in his complaint that the force was inadequate; that the foreman negligently hurried them, and he was injured. The Circuit Judge ordered a nonsuit on the ground that the plaintiff was well aware that the number of servants was insufficient, that the plaintiff nevertheless continued to do the work assigned to him, and that he thereby assumed the risk of his employment. In affirming the order of nonsuit, this Court quoted from the case of *Seaboard A. L. Ry. Co. v. Horton,* 233 U. S., 492, 34 S. Ct., 635, 58 L. Ed., 1062, L. R. A., 1915-C, 1, Ann. Cas., 1915-B, 475, the following language: "Such dangers as are normally and necessarily incident to the occupation, are presumably taken into the account, in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort. * * * But risks of another

sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care, with respect to providing a safe place of work, and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and the risk arising from it, unless defect and risk alike are so obvious, that an ordinarily prudent person under the circumstances, would have observed and appreciated them. * * * When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty."

In the case of *Williams v. Kentucky River Power Co.*, 179 Ky., 577, 200 S. W., 946, 10 A. L. R., 1396, the syllabus states this: "An employee directed to carry plank cannot hold the employer liable for hernia caused by the work being beyond his strength, although when directed to do the work he protested that it was too heavy."

It appears from the body of the opinion that, although the plaintiff said to his foreman, "it [the plank] was a little too heavy," nevertheless he went on with the work: "Appellant further testified that during the progress of the work of unloading and shortly after he began he felt the pains in the groin which were later discovered by him to have been caused by the hernia. He did not, however, complain of these pains to the foreman, or his fellow employees, and completed the work of unloading the lumber without any further complaint of the weight of the plank."

The appellant continued in the employ of the company from January 1, 1916, the date of receiving the alleged injuries, until July of the same year, during which time he performed such labor as did not require lifting or violent physical effort.

The judgment was for the defendant company. In affirming it, the Kentucky Court of Appeals said: "It is patent from the evidence that the injuries sustained by appellant resulted from no fault or negligence on the part of the foreman, but from a cause or causes purely incidental to the risk he assumed in undertaking and continuing the work of unloading the car."

Further from the same case: "It is the general rule that a servant is the best judge of his own physical strength, and in the absence of coercion compelling him to overtax that strength, it is his duty not to overtax it."

In the present case it is sought to show that appellant was "hurried" by the foreman. That does not amount to coercion of a compelling nature which forced him to overtax his strength. It is said in annotation to the *Williams case, supra:* "Upon general principles it is manifest that, although the servant may have been directly commanded or urged to undertake the work from which the injury resulted, he cannot claim an indemnity, where the danger to be encountered was at once so obvious and so serious that no prudent man would have incurred it. That is to say, the order must, if it is to serve as a justification, be in a matter with regard to which the servant has a right to rely on the superior judgment of the master."

Reported in the same annotation is the case of *Stenvog v. Minn. Trans. R. Co.,* 108 Minn., 199, 121 N. W., 903, 25 L. R. A. (N. S.), 362, 17 Ann. Cas., 240, where it was held: "A servant who strains his back while assisting in loading heavy rails upon a car at the direction of the master, who gave no heed to the complaint by the servant that they were too heavy for him, but directed him to go on with the work, cannot collect for the injury sustained, since as the servant is the best judge of his lifting capacity, the risk is upon him not to overtax himself."

In the same annotation is found the case of *Worlds v. Ga. R. Co.,* 99 Ga., 283, 25 S. E., 646; the Georgia Court said:

"Where an employee of a railroad company, in the discharge of his duties, is directed to lift and carry an ordinary object, like a cross-tie, he is bound to take notice that it is heavy, and that a certain amount of physical strength will be required to accomplish the task; and if he misconceives the amount of physical strength to be exerted, and overstrains himself in lifting the tie, and is thereby injured, the master is not liable. The fact that he was acting under the orders of a superior at the time does not alter the question, even though he might have had reason to believe that disobedience of the order would result in his dismissal."

In the case of *Steinmeyer v. Marine Hotel Corp.,* 142 S. C., 358, 140 S. E., 695, 696, this Court affirmed the action of Circuit Judge Featherstone in sustaining a demurrer to the complaint. The plaintiff sued to recover damages for an injury alleged to have been the result of lifting a heavy bucket of paint. In sustaining the Circuit Court, this Court adopted for its own the following language of Judge Featherstone: "As to the second ground of demurrer, I think there can be no doubt that it should be sustained. The unbroken current of decisions in other jurisdictions is to the effect that where a servant sustains injuries from lifting a weight which is beyond his strength, the master is not liable for the resulting injury, for the reason that the servant is held to have assumed the risk of such injury. These decisions are founded upon common sense and reason. The servant is the best judge, and, in fact, he is the sole judge, of his own strength." *Ehrenberger v. Railway Co.,* 182 Iowa, 1339, 166 N. W., 735, 10 A. L. R., 1388; *Williams v. Ky., etc., Co.,* and *Stenvog v. Ry.,* already quoted herein.

The opinion of this Court in the case of *Lyons v. R. D. Cole Mfg. Co., Inc.,* was filed January 15, 1936, and is reported in 178 S. C., 520, 183 S. E., 466, 468.

The action was brought to recover damages for injuries alleged by plaintiff to have been sustained by him while em-

ployed by defendant in moving a long steel girder. At the time of the injury, the respondent was engaged, with other laborers, in rolling on the ground a steel girder 35 feet long and weighing about 1,600 pounds. The girders consisted of two parallel beams joined together by steel latticework running diagonally from one beam to the other. In these interstices were inserted timbers 2″ x 4″ and 4 or 5 feet long; these were used in turning the girders, which was accomplished by inserting the timbers in the interstices in the latticework, and the laborers by pulling downward would turn the girder. In the turning process it was necessary that the timbers inserted in the interstices be withdrawn at the exact moment the girder got beyond the point of balance. The plaintiff was injured because he failed to move the pole in time.

Mr. Justice Fishburne, delivering the unanimous opinion of the Court, set forth the accepted rule in this State governing the doctrine of assumption of risk. He then said:

"In the light of the testimony and of the foregoing principles of law, the question in the case is: Did the respondent know, or ought he, in the exercise of ordinary common sense and prudence, to have known and comprehended the risks to which the work exposed him? The testimony conclusively shows that he was using the simplest of appliances, and was engaged in work obviously dangerous. While the testimony shows that he was inexperienced in this line of work, yet he is a man of mature years, certainly of ordinary intelligence, and accustomed to manual labor. * * * It is elementary that the master is not an insurer of absolute safety to a servant. The test of the master's liability is not danger, but negligence.

"As we see it, the testimony in the case—giving the plaintiff the benefit of every reasonable doubt—is susceptible of only one reasonable, legitimate inference, and that is that the plaintiff assumed the risk of injury from dangers which were patent and obvious."

In the case of *Hice v. Dobson Lumber Co.*, filed May 12, 1936, reported in (S. C.), 185 S. E., 742, the facts may be epitomized as follows:

The plaintiff was the foreman of appellant's planing mill. He was an experienced foreman, and had ten years' experience in operating a ripsaw.

The usual course of business at the lumber plant was that, when an order was received at the plant, it was delivered to A. D. Turner, the yard foreman; if dressed lumber was called for, Turner would select it and place it in the planing mill and turn the order over to Hice the foreman of the planing mill. On the day of Hice's injury, Turner took certain pieces of lumber, cut to the length ordered, to the planing mill; a slit was to be cut through the center of these pieces one inch square and about three feet long, leaving unsawed about three inches at each end of the pieces. Hice testified that, when Turner brought the order to him, he told him they were not equipped for a job of that kind, and suggested that it be done another way; that Turner said, "No, he had already cut the wood and they would get it out of that, and he would help me." In order to do this work, it was necessary for Hice to use the ripsaw—admittedly a dangerous instrument. In the course of the work Hice's hand came in contact with the saw and he was severely injured.

Appellant moved for nonsuit and directed verdict on the grounds that respondent was guilty of contributory negligence, and that he had assumed the risk. The motions were overruled and the respondent had a verdict.

In an able opinion Mr. Justice Baker collates the law of contributory negligence and assumption of risk, and comments upon the affinity of meaning and application of the two doctrines. In the opinion this appears:

"In the case of *Hall v. Northwestern Railway Company*, 81 S. C., 522, 62 S. E., 848, * * * the Supreme Court quoted with approval the following extract from the case of

*Barksdale v. Railway Company,* 66 S. C., 204, 44 S. E., 743:

" 'In further elaboration of the distinction, it is said * * *: "Nearly every case of contributory negligence on the part of an employee involves in a general sense some assumption of risk, because in order to be guilty of contributory negligence there must be the risk of apparent danger. When a servant risks this danger in the discharge of duty imposed on him in the course of usual duty, this would be, in an exact sense, a case of assumption of risk; but if he improperly risks the danger, which becomes a proximate cause of the injury, in doing that which is not imposed on him in the course of his usual duty, it would be contributory negligence." ' "

From the opinion of Mr. Justice Baker in *Scott v. International Agri. Corp.,* filed February 27, 1936, reported in 184 S. E., 133, 135, the opinion quotes as follows:

"An employee assumes all of the ordinary risks of his employment; that is to say, he assumes the risk of all dangers ordinarily incident to that employment. He does not, however, assume the risk of extraordinary dangers or dangers caused by the negligence of the employer or its agents and servants, unless those dangers are known to him and appreciated by him, or by the exercise of ordinary care would become known to him and appreciated by him, whether ordinary, extraordinary or however caused. We deem it unnecessary to cite authority for the foregoing statement of the law in this state regarding assumption of risk by an employee.

"We will advert to a further principle of law in connection with assumption of risk. There are certain exceptions. If there is an emergency; if there is a complaint and promise of correction; if the employee acts under the coercion of legal penalties; or if there is a basis for an honest difference of opinion as to safety in using the instrument furnished by the master, or of the manner in performing

the work, and the servant surrenders his judgment of un-safety in reliance on the master's superior judgment.

"Assumption of risk is peculiarly a question for the jury, and only in very rare cases should a trial judge direct a non-suit or direct a verdict in favor of a defendant on this ground, but there are rare cases in which this should be done. See case of *McKinney v. Woodside Cotton Mills,* 167 S. C., 438, 166 S. E., 499."

The writer of the opinion in the *Hice case, supra,* cites with approval the above-quoted established principles of the law relating to contributory negligence and the assumption of risk, and supports them with other authorities of like import and applicability. He then proceeds to make appli-cation of these acknowledged rules of law to the facts of the case under review, thus: "The respondent knew the dan-ger of a ripsaw, and had previously suffered the loss of the end of one of the fingers severed. He had been operating a ripsaw for ten years, and when he undertook to operate such a saw without guards, in fact, having in effect removed the guards or rollers, in the ordinary use of the saw, al-though this was an extraordinary risk, he says in his testi-mony that he knew it was dangerous, and if he knew it, and according to his own testimony, he knew more about ripsaws than any one else in the entire plant, Mr. Turner not excepted, and proceeded to do the work commanded, then he assumed the risk, unless he can bring himself with-in one of the exceptions."

The opinion proceeds to demonstrate that respondent did not surrender his judgment to that of Turner; he knew more about ripsaws than Turner; knew it was dangerous to undertake the work; that a ripsaw was not the proper tool with which to do this work; yet, if he claims to have sur-rendered his judgment to that of Turner, "he is met with the insurmountable difficulty that the danger was open and obvious to him and a servant cannot recklessly or carelessly obey an order of his superior requiring him to do an ob-viously dangerous act."

The opinion proceeds to demonstrate that there was no emergency to bring respondent within the exception to the rule. It seems that Mr. Turner was in a hurry to get the job done in order that he might take it to the person who ordered it when he (Turner) went to dinner. "The respondent was not under the compulsion of any set of conditions or confronted by serious danger demanding immediate action. * * * The meaning of emergency is given in Webster's New International Dictionary as 'an unforeseen occurrence or combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency.' "

The judgment for plaintiff was reversed, and the case remanded, with direction to enter judgment for defendant.

In the case we are considering there is no testimony save that of the plaintiff. He was a man 24 years of age; his testimony shows him to be intelligent and able to appreciate the conditions which controlled and directed the labor in which he was engaged. He had been doing the same kind of work for three years; his action is based on the claim that he was put to work lifting and replacing steel rails too heavy for the force of laborers with whom he was put to work. Yet he did not demur to the assignment of work given him; did not complain of inadequate assistance. He claims to have felt the pain about an hour or an hour and a half after he began work; even then he did not complain, and from the 17th to the 20th did not consult a doctor. He was the best judge of his physical strength. As the Circuit Judge said in the *Steinmyer case, supra,* he was the only judge of his strength. The danger was plainly in view and obvious to any person of ordinary sense and power of observation, and must have been appreciated by him. We can deduce from the appellant's own testimony but one reasonable conclusion, viz., that he assumed the risk of his employment.

The order granting the nonsuit was correct.

Judgment affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Baker and Fishburne concur.

Mr. Justice Carter concurs in result.