May 2, 1944.
Appellant was for many years in the employ of respondent in its freight yards in the City of Florence, beginning as a switchman, and was serving on June 8, 1937, as a yard foreman. His duties were, with an engine crew and other employees called switchmen, to "break up" incoming freight trains, and "make up" outgoing trains. This was accomplished by complicated switching operations on numerous tracks radiating from a lateral or "ladder" track. His immediate superior in this employment was one McBride who was Terminal Trainmaster and also long experienced in the service of respondent.
On the afternoon when appellant suffered the accident involved in the litigation, Mr. McBride had left orders for the manner in which the work in hand should be done and they were violated, appellant adopting other means suggested by one of the switchmen, so when the trainmaster arrived and saw the work proceeding otherwise than in accordance with his instructions, and which he deemed less efficient, he was aggravated and demanded an explanation and upon receipt of it said to appellant, in effect, that he might follow the switchman's suggestions to the extent that he would be out of a job. He profanely ordered appellant to jump a rolling box car and apply the brakes in order to prevent it from striking other cars which were on that particular spur track for repairs, on "stilts."
Appellant climbed the side ladder of the car almost to the top, transferring then to the adjacent end ladder from which he was able to reach the projecting brake wheel, resting his right foot on the brakestep. After successfully applying the brakes he started to descend and fell about twelve or fourteen feet to the ground. His arm received a compound fracture, resulting in six weeks' hospitalization during which the arm had to be amputated. He contended that the brakestep was unusual in design, the end toward him having an upturned edge, or flange on which the heel of his shoe caught, which caused his fall. *Page 456 
He brought suit in the Court of Common Pleas for Florence County, in May 1938, under the Federal Employers' Liability Act, 45 U.S.C.A., § 51 et seq., alleging in his complaint numerous acts of alleged negligence, but the issues were reduced in the trial Court, and here, to the alleged negligent employment and retention by respondent of an unfit person as trainmaster, appellant's superior, McBride; and that the brakestep was an unsafe place to work and the end-flange was dangerous and its use, therefore, was negligence.
At the trial in February, 1939, after all of the evidence was in, respondent moved for direction of verdict in its favor upon the grounds that there was no proof of negligence and that likewise the only reasonable inference to be drawn from the evidence was that appellant had assumed the risk of his injury, barring his recovery. The trial Judge granted the motion upon the first ground stated, holding that the evidence was not reasonably susceptible of an inference of negligence, and made no finding with respect to the question of assumption of risk. (The latter defense has been eliminated from the Act by the amendment of 1939, 45 U.S.C.A., § 54, inapplicable here for this accident was prior to its passage. See the interesting case ofTiller v. Atlantic Coast Line R.R. Co., 318 U.S. 54,63 S.Ct., 444, 87 L.Ed., 610, 143 A.L.R., 967.)
From the directed verdict and the judgment against him, appellant brought this appeal whereupon respondent submitted an additional ground to sustain the order and resulting judgment, that the only reasonable inference deducible from the record is that appellant assumed the risk of the injury which he received. Appellant's brief submits three questions for determination by this Court, in effect as follows: (1) Was there no evidence of negligence in the employment by respondent of "a vicious and inefficient superior officer who cursed and abused plaintiff, and required the master's work to be done in a hurried, hasty and dangerous method?" (2) "Was there error in directing a verdict on the ground *Page 457 
that there was no substantial evidence that plaintiff was required to use a strange, defective and dangerous appliance?" And (3) "Did the plaintiff assume the risk of his injuries?"
It is seen that if Questions 1 and 2 are answered adversely to appellant there will be no need to consider his contended third issue, which course was followed by the trial Court. Furthermore, the first question is mistakenly presented. The liability of a master for the incompetent act of an employee whom the master has negligently employed, or retained in employment, with actual or imputed knowledge of his incompetence, arose as an exception to the fellow-servant rule. The following is quoted from 35 Am. Jur., 770: "While the fellow servant doctrine exempts the employer from liability for injuries caused to an employee by the negligence of a co-employee, the rule is based upon an assumption that the injury was not caused by unfitness, incapacity or incompetence on the part of the wrongdoer. The Court have always conceded that the fellow servant rule is subject to an exception in cases where there is negligence on the employer's part in employing or retaining in his employment incompetent or delinquent co-servants. It is the duty of an employer to select and retain competent employees, and when one is injured by a fellow employee who, the evidence shows, was not competent to perform the service in which he was engaged, and the injury to the victim was attributable to his incompetency, a recovery against the employer may be had, provided it is further made to appear that the employer knew, or is chargeable with knowledge, of the incompetency of such fellow employee and that the injured employee did not know, actually or constructively, of such incompetency."
The Federal Employers' Liability Act, admittedly applicable to this case, has abolished the fellow-servant rule in controversies within its scope; so exceptions to that rule fell with it and are not important here. "The abolition of the *Page 458 
(fellow servant) rule is perhaps the most important achievement of the Act." 35 Am. Jur., 814. If McBride negligently ordered appellant to mount the box car and such contributed as a proximate cause to the latter's injury, liability upon respondent could properly be predicated thereon without regard to any alleged negligence in the employment or retention of McBride by respondent.
Illustrative of appellant's contention as he has made it is the case of Wabash Railway Co. v. McDaniels, 1882,107 U.S. 454, 2 S.Ct., 932, 27 L.Ed., 605, cited by him. In that case plaintiff's injuries resulted from the undoubted negligence of a seventeen-year-old night telegraph operator, recently employed by the defendant, who slept through the passage of a train by his station. Recovery was permitted upon the negligence of the Company in employing so incompetent a person to perform the highly important duties entrusted to him; this under the exception to the fellow-servant rule, discussed above, and was before the passage of the presently controlling Employers' Liability Act, hence it is not applicable to the present problem.
However, the allegation of error urged by appellant in this respect may be broadly interpreted to be a charge of error in the failure of the trial Court to submit to the jury an issue relating to the claimed negligence of the trainmaster in the manner of his ordering appellant to perform the duty which occasioned his accidental fall. The question then may be framed as follows: Was there evidence from which the jury could have reasonably inferred causative negligence in the action of the trainmaster?
Preliminary to his argument of the stated questions, appellant in his brief undertook to show that there is no difference between the rule of our decisions as to the sufficiency of evidence for submission to the jury of the issue of negligence and the rule of the Federal decisions applying the governing Act. Passing over the question of *Page 459 
whether there is or is not any difference, for such is immaterial here, the law of the Federal decisions is undoubtedly applicable and controlling. There need only be cited on this point the opinion of this Court which was recently filed, and the authorities set forth in the case of Jester v. SouthernRailway Co., 204 S.C. 395, 29 S.E.2d 768. Other apposite South Carolina decisions may be found by reference to 9 West's S.E. Digest, p. 381, Courts, Key 97 (5), and supplement, and the Federal Supreme Court decisions in West's U.S.S. Ct. Digest, Courts, Key 394 (24).
The point is immaterial, as above indicated, because under no texts or decisions of which we know, State or Federal (and appellant has submitted none in argument), is a railroad employee entitled to recover damages from his employer for injuries received in a fall from the brake ladder of a box car unaccompanied by some act of causative negligence of the employer or a fellow-employee, as this unfortunate accident was. More will be later said concerning the evidence which plainly necessitates the latter observation.
Recurring to appellant's assignments of error, that first stated will be now considered, whether the trainmaster was negligent in directing appellant to the task at the completion of which his injury occurred or, rather, whether there was any evidence from which the jury could have reasonably found negligence in this particular.
It is quite true that the trainmaster was rough and profane in the order which he gave, but the evidence establishes that profanity was the common parlance of the yards, and there was no evidence that his superior's uncouth command to appellant to board the box car and brake it had anything to do with his fall. It is earnestly argued that the haste demanded amounted to negligence, but no causal connection appears. The brakes had been applied and appellant had begun his descent when he slipped or tripped and fell. And there is no evidence of any further cursing or hurrying of appellant by the trainmaster after *Page 460 
he began the ascent of the car in obedience to the order. On the question of "haste," see Terry v. Atlantic Coast Line R.Co., 181 S.C. 151, 186 S.E., 159.
Upon this point appellant urges the authority of Stephensv. Southern Ry., 82 S.E., 542, 64 S.E., 601, in which it was declared by this Court that it could not be said in that case, as a matter of law, that it was not negligence for the engineer to order the fireman to jump from the engine which was running at the rate of six or seven miles an hour; and similar decisions from other jurisdictions are cited. But these precedents have no application, for the various injuries involved resulted from the leaps from the moving cars, while here it is clear that appellant's injury did not result from his mounting the moving box car; there was no evidence upon which a contrary conclusion could have been rested.
Thus the first question, our version of appellant's first, is necessarily answered against him and the exceptions thereabout are overruled.
Turning to the second question, in effect that there was evidence which should have been submitted to the jury, that the brakestep was defective and its use, therefore, negligence on the part of the respondent, we likewise find no error in the disposition of it by the trial Court.
The questioned appliance was attached to and a part of a box car of the Baltimore Ohio Railroad Company. The uncontradicted evidence is that at the time of appellant's unfortunate fall it was as originally manufactured and affixed to the car; no repair or alteration had ever been made. The design was patented by an official of the Baltimore Ohio Company and had no flange or upturned edge at the end, but only at the side. Appellant's testimony stood alone against the evidence of officials and employees of respondent and the Baltimore Ohio, and against photographs which were *Page 461 
indisputably of the very brakestep from which appellant fell. He did not testify that he saw a flange at the end but that he felt it as it caught his shoe and caused him to fall. It may well be that he was honestly mistaken and if his foot caught on a flange, it was that on the side, as to which latter there is no claim of negligent construction. We see it clearly, as did the trial Judge, that it could not be reasonably inferred from the evidence that there was any end flange on the brakestep used by appellant on the fateful occasion.
Appellant, having pitched his case in this respect upon the existence of an end flange, or upturned edge, upon the brakestep, inevitably fails. It could not have been reasonably so found by the jury and the question thereby became one of law for the Court which, therefore, properly directed the verdict on this feature, also.
In the light of the foregoing, it is seen that the only inference of which the evidence is susceptible is that appellant fortuitously fell from the ladder, which mishap was not caused or contributed to in any degree by the negligence of respondent or its other employees. Under these circumstances there can be no liability; for the latter to exist there must be some evidence of negligence or willfullness, — it is a sine qua non. Chesapeake O.R. Co. v.Mihas, 280 U.S. 102, 50 S.Ct., 42, 74 L.Ed., 207.
Judgment affirmed.
MR. CHIEF JUSTICE BAKER, and MESSRS. ASSOCIATE JUSTICES FISHBURNE and TAYLOR concur.
MR. ASSOCIATE JUSTICE OXNER disqualified. *Page 462